ELIZABETH MESERVE *vs.* ALBION G. MESERVE.

*Rights of women married before March 22, 1844, to property acquired after that date.*

By the will of her father, made in 1837, and taking effect upon his death in 1850, certain real estate was devised to the plaintiff, who was married prior to the passage of the act of March 22, 1844, relative to the rights of married women; *held,* that this was property coming to, and held by, her in her own right, which she could manage, sell, convey and devise, agreeably to R. S., c. 61, § 1, without the joinder or assent of her husband; her father's will speaking, not from the date of its execution, but from his death.

In such case, the wife can maintain an action against a disseizor justifying under her husband.

ON EXCEPTIONS.

FORCIBLE ENTRY AND DETAINER to obtain possession of certain premises devised to the complainant by her late father, Crispus Graves, by a will executed June 5, 1837, by which he gave the use and income thereof for life, to Jenny Graves, his wife, who died in December, 1866; and also bequeathed to said Jenny, certain personal property, and then provided that all the rest and residue of his estate "should descend and be distributed agreeably

to the laws of this State, in the same way and manner as though this last will and testament had not been made." He then added this clause: "Believing that my daughter Elizabeth, now wife of Joshua Meserve, is .in comfortable circumstances, and stands in need of no special provision in this my last will," and appointed an executor. Mr. Graves died in 1850, and his will was probated June 18, 1850. The respondent claimed that Joshua Meserve, the plaintiff's husband, was entitled to hold the possession of the premises for his life, by reason of the coverture which existed when the act of March 22, 1844—Public Laws of that year, c. 117—was passed; and justified his own possession and detention of the estate under the license and authority of said Joshua, whose son he is, born of this plaintiff prior to 1837.

The case was submitted to the presiding justice, who ruled that the action could be maintained, and that the complainant was entitled to the possession of the demanded premises, and the respondent excepted.

*Henry Orr,* for the respondent.

*W. Gilbert* and *J. W. Spaulding,* for the complainant.

BARROWS, J. The first question for determination is whether the premises, the possession of which the plaintiff seeks to recover in this process, are to be deemed her property in her own right— such property as under the statutes of our State, she, though a married woman, may manage, sell, convey or devise without the joinder or assent of her husband.

The position of the defendant, who is the plaintiff's son, is, that the plaintiff's husband, under whom he holds, has a life estate therein.

The property was once the homestead farm of Crispus Graves, the plaintiff's father, who died testate in March, 1850, leaving a widow, and an only child, (this plaintiff) who was married to her present husband and gave birth to the defendant prior to the passage of the act of March 22, 1844. The will of Crispus Graves

made and executed in 1837, was duly probated shortly after his death in 1850. To make sufficient and secure provision for the support of his wife during life seems to have been its main object. To her, among other things, he gives a life estate in the homestead farm now in controversy, which she held until her death in 1866. The plaintiff claims that she has title to it, and the right to control it independent of her husband, under the residuary clause in the will which runs thus: "All the rest and residue of my estate whether real, personal or mixed, of every description whatever, it is my wish and will should descend and be distributed agreeably to the laws of this State in the same way and manner as though this last will and testament had not been made."

The defendant insists that this clause refers to the statutes regulating the descent and distribution of real and personal property as they existed at the time of the execution of the will in 1837, and not to those which were framed subsequently but prior to his death in 1850; that it must be deemed the intention of the testator that his son-in-law should have the life estate which he would have had if the statutes in force when the will was made had remained unchanged till the testator's death; in other words, that the will, upon this point, speaks from the date of its execution, and not from the time when it took effect.

But we are of the opinion that when a testator directs that any portion of his estate shall descend or be distributed according to the laws of the State in which he lives, he must intend the laws that are in force when his will takes effect; and when he adds to such directions the significant words "in the same way and manner as though this last will and testament had not been made," he emphasizes that intention in a mode too clear to be misunderstood.

It is not reasonable to suppose that the testator intended to set his heirs and executors groping, at the hazard of mistake, among the ill-remembered laws of the past, to ascertain the disposition he had made of his property, when he had kept his will by him through the various changes of the statutes, and left it at last to

Meserve v. Meserve.

represent his wishes at the time of his death. For the convenience of all concerned, and the prevention of mistakes, we should say that upon this point, in the absence of any words clearly expressing a contrary intention, the presumption ought to be that the testator intended that the laws in force when his will becomes operative to pass the estate should govern, even if it were not also the general presumption that the testator expects the words of his will to speak from his death. 1 Redfield on Wills, 379, 380, and notes.

The suggestion in the will that the testator believes his daughter to be in comfortable circumstances and to stand in need of no special provision in the will was inserted to show that while his only child and heir was not forgotten, he deemed it his first duty to provide for his wife during life, and cannot be understood as signifying a preference of his son-in-law to her. One of the cardinal rules of construction is that "the heir is not to be disinherited without an express devise or necessary implication." Jarman's General Rules given in note. 1 Redfield on Wills, 425.

As the statutes stood at the time of Crispus Graves' death, any married woman, whether married before or after the passage of the act of 1844, might "become seized or possessed of any property real or personal by direct bequest, devise, gift, purchase, or distribution, in her own name and as of her own property, exempt from the debts or contracts of her husband." Public Laws of 1847, c. 27, §§ 1 and 3. This necessarily excludes the husband from a life estate therein.

Under R. S., c. 61, § 2, only rights acquired before the passage of the statute of 1844, March 22, are protected. As to the property here in dispute, the wife acquired no right therein until the death of her father in 1850. The husband has no interest therein and no right to control it except by permission of the plaintiff.

Nor does the coverture of the plaintiff preclude her from maintaining this process against one holding under the husband.

The wife's agents acting under her directions with regard to property held by her in her own right have always been protect-

ed from suit by the husband, and her authority constitutes a complete justification for them. *Southard* v. *Plummer*, 36 Maine, 64; *Same* v. *Piper*, id., 84.

Thus much by way of protection against a wrongful intermeddling by the husband with the wife's property, the law clearly gives, and although the decisions are adverse to the maintenance of a suit by the wife directly against the husband for such wrongful acts when the coverture is properly pleaded, we find nothing that militates against her right to maintain suits against third parties, wrongfully claiming to hold or appropriate her property under color of authority from her husband.

Even when she brought suit against her husband and a co-trespasser jointly, though the husband was discharged by reason of the coverture, the co-trespasser, acting presumably under his directions, was held liable. *Smith* v. *Gorman*, 41 Maine, 408.

Were it otherwise, the wife's property could have no efficient protection against any disposition which the husband might see fit to make of it, however unjustifiable or injurious.

Even if the coverture of the plaintiff had been regularly pleaded in abatement, it could not have availed this defendant.

*Exceptions overruled.*

