# The State *v.* The Board of Revenue and Road Commissioners of Mobile County.

73   65
129  152

*Petition to have vacated and set aside Assessment of Income of Railroad Company for Taxes.*

1. *Taxation of income of railroad companies; no law providing for.* Since the approval of the revenue act of December 31st, 1868 (Pamph. Acts, p. 297), there has been no law in this State, authorizing the assessment and collection of taxes on the income of railroad companies.

2. *Same; can not be imposed without a levy by the legislature.*—While the present Constitution requires, as did the Constitution of 1868, that the income of corporations shall be taxed at the same rate that is imposed on the income of natural persons, and the legislature, when the power is asserted, can not tax the one at a higher, and the other at a lower rate, yet, the first step in taxation being the levy by the legislature, until that is done, there can be no assessment or collection of taxes on either.

3. *Failure by legislature to levy taxes; effect of.*—When the legislature, through a failure to levy, leaves a species of property free from taxation, by providing no machinery which can be adapted to the assessment, the courts are powerless to remedy the evil.

APPEAL from Mobile Circuit Court.

Tried before Hon. WM. E. CLARKE.

This was a proceeding instituted before the Board of Revenue and Road Commissioners of Mobile county by the Louisville & Nashville Railroad Company, seeking to have vacated and set aside, as illegal and unauthorized by law, certain assessments made by the tax collector of said county against the Mobile, New Orleans & Texas Railroad Company and its successors, for taxes on the income of said railroad from 1874 to 1881, both inclusive, it being claimed that such income was subject to taxation, and had escaped therefrom during those years.

5

The petitioner is shown to have been, at the time the assessments were made, the lessees of said railroad, operating and controlling it.   The Board of Revenue and Road Commissioners vacated and set aside the assessments; and the cause was carried to the circuit court by *certiorari*, where the judgment of said board was affirmed.

The judgment of the circuit court is here assigned as error.

H. C. TOMPKINS, Attorney-General, TOULMIN, TAYLOR & PRINCE, SMITH & McDONALD, and G. M. MARKS, for appellant.

P. & T. A. HAMILTON, GAYLORD B. CLARK, E. L. RUSSELL, and B. B. BOONE, *contra*.

STONE, J.—The revenue law approved February 22, 1866—Pamph. Acts, 1865-6, page 8—levied a tax of one-half of one per cent. on the gross receipts of all railroads, derived from the transportation of freight and passengers, within the limits of the State of Alabama.   The same statute, § 5, page 11, levied a tax of one per cent. "upon the annual gains, profits, or income of every person residing within the State," enumerating the many sources from which gains, profits and income can be derived, and specifying certain discounts to which the tax-payer is entitled.   In the act approved February 19, 1867—Pamph. Acts, page 264, § 2, subd. 15, and § 3—are found substantially the same provisions in regard to taxation of gains and incomes of persons, and the gross receipts of railroads, as those found in the act of 1866.   Under these two statutes, there can be no question that the receipts—incomes—of railroads were taxed, and at a different rate from that which was prescribed for taxing gains, profits and incomes of persons.

The revenue act approved December 31, 1868—Pamph. Acts, 297—originated an entirely new system, and, alike in the levy and assessment of railroad taxes, prescribed methods and a system, fundamentally different from those which were made applicable to other classes of tax-payers.   We commented on the differences between these systems in *Perry County v. Railroad Company*, 58 Ala. 546, 558 *et seq.; State Auditor v. Jackson County*, 65 Ala. 142.   Railroad property is of a peculiar nature.   Its line may extend through the length or breadth of the State; and frequently extends through several States, operated under one ownership and control, and in one name, throughout its whole length.   It may and does own local property, such as depots, machine-shops, etc., in the different counties along its line; but its chief property—franchise, road-bed and surperstructure—is one continuous thing from terminus to terminus.

VOL. LXXIII.

So, the rolling stock is confined to no particular section of the road, but moves, and necessarily moves over the whole line. No section of the road can claim that the rolling stock, or any part of it, belongs to it, or has its domicil within its limits. It is the rolling stock of the whole line, and pertains as much to one section as to another.

Aware of these peculiarities of this species of property, the legislature, in the act of 1868, declared a new and distinct system for the assessment and taxation of that part of railroad property, which was continuous and common to the whole line. This embraced the road-bed, superstructure and rolling stock. These properties were under the care, surveillance and protection of the various jurisdictions, State and county, through which the line extended, and it was natural that they should contribute to the revenue of the several jurisdictions which thus guarded and protected them. So thought the legislature, and so they enacted. County assessors, it was supposed, could not, with propriety and just uniformity, ascertain the whole value of the road-bed, superstructure and rolling stock belonging to the whole line, and thus apportion such values between the several counties. Such mode of assessment would have led to disputes, contentions, controversies and litigation. Moreover, such plan would have imposed on the railroad officials the duty and task of rendering in fragmentary parts of their property in every county traversed by their road, and it is more than a probability that no uniform, or harmonious valuation would have been arrived at in the different counties. This would have led to litigation, possibly, in every county touched by the line of the road. The legislature chose a wiser and simpler course. They relieved the county assessors of this difficult and harassing service, and imposed it on high officials of the Executive Department of the Government. They required that the whole value of the road-bed and superstructure within the State of Alabama should be ascertained, and that the same should be apportioned among the several counties traversed by the road, in the proportion which the number of miles of the road's length in each particular county bore to the whole length of the line in the State. The same was prescribed as to the rolling stock, when both termini of the road were in Alabama. But when the line of the road extended beyond the State, the rule for ascertaining the proportionate value of the property for taxation in the several counties was varied in form, but preserved in principle. The rolling stock pertained to the whole road—that without the State of Alabama, as well as that within. In such case, Alabama would not have the right to tax the whole rolling stock, but could only tax in that proportion, which the part of the railroad which was in Alabama bore to the whole line of the

road, from terminus to terminus; and such portion of the value as would fall to Alabama was then required to be apportioned to the several counties, according to the rule stated above. Now, this rule and duty of apportionment among the counties was adopted, that the counties might have a basis for levying the county tax. It was not essential to the assessment of the State's revenue, for that was done by the State Auditor.

As we have said, the revenue law of 1868 separated the tax assessment of railroad property into two classes. That which pertained to the whole line was required to be assessed by the State Auditor, assisted, as a board of equalization, by other State executive officers. This included the right of way, road-bed, side track and main track throughout the State, and the locomotive engines and all cars of every description. When the value of these subjects of taxation was fixed and agreed upon, it was declared that the value thereof should be apportioned by the Auditor *pro rata* to each mile of main track, and it was made the duty of the Auditor to notify the assessors of each county through which the road ran, of the number of miles of track and the value thereof, and the proportionate value of personal property (rolling stock), taxable in their respective counties. This entire service was imposed on the Auditor, and with it the county assessor had nothing to do. At this stage the functions of the county assessor came into exercise. To this partial assessment furnished by the Auditor, the assessors were required to add the value of all other real property, except the land donated by Congress, and therein exempted, together with all fixtures, machinery, tools and other property within their respective counties. The list thus made out constituted the assessment of the several counties, as provided by that statute. § 14, pp. 307–8. The tax on the gross income of railroads, for which the statutes of 1866 and 1867 had provided, was omitted from the revenue act of 1868. But the section or clause which taxed the annual gains, profits and incomes of every person residing within this State was retained.—§ 13. On all questions material to the subject we are discussing, our statute law has undergone no material change since 1868. The same divided duty of assessment between the Auditor and the county assessor, and the same line of separation between their jurisdictions have been all the while maintained.—Act of 1875, § 21—Pamph. Acts, 14–15; Act of 1876, chap. 4, § 5—Pamph. Acts, 52; Code of 1876, § 380. During all that time, a tax has been levied on the gains and income of every person in the State, but in the act of 1875, it was limited to salaries and fees of public officers, and salaries of all other persons over five hundred dollars. There has been no re-enactment of the clause taxing the income of railroads, nor has there been any express levy

·of such tax on railroads, nor any express provision for assessing such tax.

It is contended for appellant that the general provision for taxing gains, profits and incomes, commencing with the revenue law of 1868, and continuing to the present time, embraces railroads, and that the present assessments should be, therefore, upheld.· We can not agree to this, for many reasons. The statutes of 1866 and 1867, while they contained clauses substantially the same as the later enactments in reference to the taxation of gains, profits and incomes of persons, each made special provision for the taxation of the income of railroads ; thus showing that in their nomenclature, the word *person*, whose gains and income it taxed, did not include railroads. This is a legislative interpretation of the language they employed. But a stronger argument is found in the divided functions of assessment, first introduced by the revenue law of 1868. As we have said, all the property of the road which pertained to the whole line, and which was specified as subject to taxation, it grouped in one class, and declared that it should be assessed by the Auditor, assisted by other executive officers of the State. This included the right of way, main and side track, and rolling stock. Not a word said about income and profits, which equally pertain to the whole line of the road, and which, if intended to be taxed, it would seem should be assessed as the rolling stock is assessed. The statute then specified what property of the railroad should be assessed by the county tax assessor. It was, '' all ·other real property, except the land donated by Congress, and ex-·empted, together with all fixtures, machinery, tools and other property within their respective counties.'' It is manifest.that income is not embraced in either species of property expressly mentioned, and it can not be brought under the general clause, '' other property within their respective counties.'' When the road extends into·or through more counties than one, it can not, with any propriety, be affirmed that its income has a habitation in any one county. Another serious embarassment that would be encountered in assessing income in the several counties through which the railroad might run, is sufficiently pointed ·out in what we have said above. How.could a just and harmonious assessment be made by several county assessors, each acting independently of the others? And can it be supposed the legislature intended that the railroad officials should parcel ·out their income, and render in the fractions to the several ·county assessors along the line? And why require this as to incomes, when the legislature had relieved them of this difficult task, as to the kindred subjects, the right of way, road-bed and rolling stock?

[Bradley et al. v. Harden, Adm'r.]

If it be contended that the assessment for the whole line may be made in the county in which the road has its principal office, the answer is, *first*, that there is no statute authorizing it; *second*, it is not in harmony with the legislative policy, as shown in the taxation of other railroad properties, which pertain to the whole line; and, *third*, that it would discriminate unjustly and oppressively against the other counties along the line, in the matter of levying and realizing taxes for county purposes. Why should one county enjoy this entire revenue, when the duty of protecting the property rests alike on every county and jurisdiction through which the railroad passes? Since December 31, 1868, there has been no law in this State, authorizing the assessment and collection of taxes on the income of railroads.

By the Constitution of 1868, Art. 13, Section 4, and the Constitution of 1875, Art. 11, Section 6, it is ordained that the property of private corporations and of individuals shall forever be taxed at the same rate. Under this clause of the Constitutions it is contended that, inasmuch as the incomes of individuals—natural persons—are taxed, it is a constitutional duty to tax, at the same rate, the incomes of corporations. Such is undoubtedly the case, and the legislature, when they assert the power, can not tax one class at a higher rate, and the other at a lower rate.—*Mayor v. Stonewall Ins. Co.*, 53 Ala. 570. But the first step in taxation is the levy by the legislature. Till that is done, there can be no assessment or collection. And when the legislature, through a failure to levy, leave a species of property free of taxation, by providing no machinery which can be adapted to the assessment, the courts of the country are powerless to remedy the evil.—*Pollard v. Zuber*, 65 Ala. 628; *State Auditor v. Jackson County*, Ib. 142; *Maguire v. Road Commissioners*, 71 Ala. 401.

The judgment of the circuit court is affirmed.