# Western Union Telegraph Co. *v.* State Board of Assessment.

*Certiorari to Board of Assessors, in Matter of Tax Assessment Against Telegraph Company.*

1. *Constitutional provisions regulating taxation on property.*—The constitutional provisions which declare that "all taxes levied on property shall be assessed in exact proportion to the value of such property," and inhibit the levy of "a greater rate of taxation than three-fourths of one *per centum* on the value of taxable property within this State," (Art. XI, §§ 1, 4), prescribe a rule and limit of taxation on property, but do not include all the legitimate subjects of taxation, some of which are not susceptible of determinate value.

2. *Tax on gross receipts from business of telegraph companies; constitutionality and extent of.*—The tax of two *per cent.* levied on the gross amount of the receipts of every telegraph company, "derived from business done by it in this State" (Sess. Acts 1884-5, p. 10, § 6, subd. 6), is not violative of any constitutional provision regulating taxation; nor is it an unauthorized interference with inter-state commerce, although it includes receipts here on messages sent to or from places beyond the limits of the State.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

The appellant in this case, a foreign corporation, organized under the laws of New York, and doing business in this State, complaining of the taxes assessed against it by the State Board of Assessment, for and during the year, 1884, filed its petition for a *certiorari* to remove the proceedings into the Circuit

18

Court, asking that they be set aside and quashed, as being illegal, unauthorized and void. On motion of the defendants, by their attorney, the court dismissed the petition and *certiorari*, holding the proceedings legal and regular; and this judgment, to which the petitioner excepted, is now assigned as error.

(No brief of appellant came into hand of reporter).

GAYLORD B. CLARK, and THOS. G. JONES, for appellant.

CLOPTON, J.—Subdivision six of section six of the Revenue Law levies a tax of two *per centum* " on the gross amount of the receipts by any and every telegraph, telephone, electric light, and express company, derived from busines done by it in this State." Acts, 1884–85, p. 10. The constitutionality of the statute is the material point of contestation ; which question we shall consider on account of its importance to both the State and the tax-payer, pretermitting any expression of opinion as to the appropriateness or regularity of the proceedings. Appellant contends the statute violates section one of article eleven of the Constitution, which requires that " all taxes levied on property in this State shall be assessed in exact proportion to the value of such property ;" and also, section four of the same article, which provides, " The General Assembly shall not have the power to levy, in any one year, a greater rate of taxation than three-fourths of one *per centum* on the value of taxable property within this State."

Prior to the Constitution of 1865, the only limitations on the power of taxation were, that no one shall be obliged to pay any tithes, taxes, or other rate, for the building or repairing of any place of worship, or for the maintenance of any minister or ministry ; that no power to levy taxes shall be delegated to individuals or private corporations ; and taxes shall not be levied for their benefit, without the consent of the tax-payer. The *ad valorem* rule was first introduced, and then only applicable to real property, in the Constitution of 1865, by the mandate, " All lands liable to taxation in this State shall be taxed in proportion to their value." On personal property taxes could be imposed as the legislature might consider most expedient. The rule was extended, and its application enlarged in the Constitution of 1868, by incorporating therein an article providing, " All taxes, levied on property in this State, shall be assessed in exact proportion to the value of such property ;" and also a prohibition that the General Assembly shall not have power to authorize any municipal corporation " to levy a tax on real and personal property to a greater extent than two *per centum* of the assessed value of such property." The pro-

vision of the Constitution of 1868, first quoted, entered *in totidem verbis* into the present constitution, with a super-added prohibition as to the rate of taxation to be levied by the General Assembly ; and the rate authorized by municipal corporations was reduced.   There are other provisions relating to taxation in the two later constitutions, which it is unnecessary to note, as they have no material bearing on the question under consideration.

Having been taught by experience that no legislative power is more liable to oppressive use than the taxing power, and having suffered evils by resting it too broadly on discretion, the people have shown, in the history of the successive constitutions, a progressive policy to restrain the power of the legislative department in this respect, and to remedy existing, and guard against apprehended evils, by imposing limitations consistent with the public needs and the public safety.   The just expositor, in interpreting the constitutional mandates and inhibitions, will consult the changes, that have been made from time to time, the causes which produced them, and the mischief intended to be remedied.   The words used should be allowed such operation and force, as will reasonably accomplish the purposes proposed, but without extension beyond their legitimate meaning, and so as to avoid embarrassing and disabling proper governmental administration.   Thus considered and interpreted, do the provisions of the Constitution apply to every subject of taxation, to which resort is usually, and may be legitimately made, to raise money for public purposes and needs? or only to direct taxation on property as such, by prohibiting an arbitrary, specific standard, and requiring assessment in proportion to its value ?   Was it intended to limit the subjects of taxation, or only to prescribe the mode of assessing the taxes when levied on a particular subject ?

Fortunately we are not without aid in interpreting these provisions.   Substantially similar provisions were contained in the constitutions of some of the other States, which had received judicial construction, prior to their incorporation in either of our constitutions.   The constitutions of California, Texas, Virginia, Louisiana, Illinois, Ohio and other States, contain similar or equivalent provisions, which had been construed, not to prescribe a limit as to the subjects of taxation, but as intended to prohibit an arbitrary taxation of property, as to kind or quality, without regard to value.—*People v. Coleman*, 4 Cal. 46 ; *Eyre v. Jacob*, 14 Gratt. 422 ; *Sawyers v. City of Alton*, 3 Scam. 127 ; *Aulanier v. Governor*, I. Tex. 653 ; *Baker v. Cincinnati*, II. Ohio St. 534.   In *Aulanier v. Governor, supra*, it is said :   " The word *property*, as used in the Constitution, can not, by any forced construction, be

tortured into meaning an occupation, calling, or profession." In *Glasgow v. Rowse*, 43 Mo. 479; WAGNER, J., says: "That taxes should be uniform, and levied in proportion to the value of the property to be taxed, is so manifestly just, that it com· mends itself to universal assent. But, notwithstanding· the constitutional provision, there are some kinds of taxes that are not usually assessed according to the value of property, and some which could not be thus assessed; and there is, perhaps, not a State in this Union, though many of them have in substance the same constitutional provision, which does not levy other taxes than those imposed on property. * * * It therefore seems plain, that the constitutional requirement, that ' taxation upon property shall be in proportion to its value,' does not include every species of taxation; nor, indeed, would it be possible to place such an interpretation upon it without doing the grossest injustice." In Buroughs on Taxation, § 54, referring to such limitations, the author observes: "These provisions, as a general rule, are held to apply to property alone, and not to include taxation on privileges or occupations, or upon the exercise of a civil right, as taking by devise or descent."—Cooley's Con. Lim. 619; *Western U. Tel. Co. v. Mayer*, 28 Ohio St. 521; *State v. Western U. Tel. Co.*, 63 Me. 518.

It is conceded that the word *property* is sometimes employed in the revenue laws in its comprehensive sense, and as synonymous with *subjects;* and will be so construed, when required by the context, or when the manifest purpose of the law will be otherwise defeated. Such is the case of *Lehman, Durr & Co. v. Robinson*, 59 Ala. 319. Being used in more than one sense, the inquiry is, in what meaning is it employed in respect to the levying of taxes? If there be nothing showing a different intention, words ordinarily are to be taken in their usual and familiar import; and when general and continuous usage in legislation respecting a particular subject-matter has imparted a particular meaning, subsequent use of the same word in legislation relating to the same subject-matter creates a reasonable inference that it was intended to be employed in the same sense, there being nothing in the context showing a different intention. Taxes are not levied upon the *right* a man may have to anything—the right of possession, use, enjoyment, and disposition, which is property, taken in its legal and technical signification; but upon the subject of these rights. Therefore, in specifying the subjects, generally, an obvious distinction is recognized and maintained between property taxed as such, and the other subjects of taxation. In *Lott v. Rose*, 38 Ala. 156, the question was, whether the authority conferred on the county of Mobile to assess and collect a tax, not exceeding twenty

cents on each hundred dollars of taxable property within the county, conferred a power to levy a tax of twenty cents upon each hundred dollars of the gross amount of the sales of merchandise. The authority was claimed on the ground, that the State revenue law assessed a tax on the gross amount of sales of merchandise, thereby constituting such sales taxable property. It was held, that every subject of taxation, under the State laws, can not be considered as embraced by the terms "taxable property" employed in the special act; and that in various sections of the general revenue law, the distinction between *property* made liable to taxes, and other subjects of taxation, is clearly drawn. It is said: "A tax upon the gross amount of sales of merchandise, under section 391 of the Code, is not a tax upon the goods themselves, or the fruits of the sale, but upon the business of the act of selling. This is not, then, a property or income tax, but an occupation or privilege tax, the amount being regulated by the extent to which the privilege has been enjoyed." *Property*, when employed in connection with the assessment and levy of taxes, had thus received a judicial interpretation, which, we must presume, was in the contemplation of the framers of the organic law.

Not only were the provisions of the Constitution adopted in view of the judicial construction placed upon the meaning of "property," as used in the revenue laws several years previously, but the special matter of consideration was the necessity and expediency of restraining the power to tax, as conferred by the general grant of legislative power. The convention was advised that, independent of special restrictions, the taxing power extends to "person, or property, or possession, franchise or privilege, or occupation or right;" and reaches every source of revenue and subject of taxation within the jurisdiction of the State, only limited by public purposes, and only restrained by the protection guaranteed to private rights against oppression; and that all these sources and subjects of taxation had been and were resorted to. Property always had been and was the main reliance for raising revenue. The apprehended evils and dangers of oppressive and arbitrary taxation were especially directed to this subject—property, tangible and visible, capable of being reached, and easily confiscated. The *desideratum* was the protection of the property of the citizen against forced contributions or legislative plunder. Assessment in exact proportion to value is the mode and means of protection, with an added limitation on the rate of taxation. Hence, the limitation in the Constitution of 1868, from lands to property as embracing the subjects of ownership, whether real or personal; and the same clause is brought into the present Constitution without any modification or change. With a knowledge

of the various subjects of taxation; of the well-defined distinction between property, when made liable to taxes, and other subjects of taxation; and that among such other subjects were occupations, privileges, business, and licenses, which in the nature of things are incapable of determinate value, valuation was adopted as the basis and measure of assessment. The limitations, by their terms, signify an intention that the provisions shall be only applicable to property, the value of which is capable of definite ascertainment by the officer whose duty it is to make the assessment; and that all other subjects of taxation should be excluded from their operation. The language is: "All taxes levied on *property* in this State, shall be assessed in exact proportion to the value of *such property.*" The terms are restricted to property, as a species of the *genus*, "subjects of taxation." The context shows, that the word is employed in its usual and ordinary meaning, designating the thing owned, in the same sense in which it was generally used in the sections of the revenue laws, relating to the assessment and levy of taxes. The legal and logical sequence of the position of appellant would be, that the limitations operate to prohibit the levy of taxes on any subject, not susceptible of determinate value.

It is contended, that if the word "property," as used in section one of article eleven, be construed as not synonymous with "subjects of taxation," the terms "taxable property," as used in section four of the same article, include any subject which can be taxed; and that the section forbids a greater rate of taxation on any subject than three-fourths of one *per cent.* If the terms of the section had been general,—prohibiting a greater rate on *any taxable property,*—without qualifying words, there would have been much force in the argument of counsel. But here, also, we find valuation constituting the basis on which the prohibition as to the rate rests, and by which it is determined. In *Lott v. Rose, supra,* these words were construed. It is said: "Where the words 'taxable property' occur in an independent act, it would seem that they should be understood in the sense of things taxed which are susceptible of ownership or possession, unless there is something in the context which affixes to them a different meaning, or unless the plain object of the law will be defeated, if they are not held to cover subjects of taxation which are not property in the ordinary sense." If so construed when employed in an independent act, a *fortiori*, such should be the construction when used in a section composing, with others, the article of the Constitution relating to the subject of Taxation, all the sections of which, being *in pari materia,* should be construed together. The framers of the present Constitution, experiencing that the limitation in

the one preceding, requiring taxes levied on property to be assessed in proportion to value, was ineffectual to prevent oppressive taxation, connected therewith a prohibition as to the rate of taxation on such valuation.

It may be considered that the gross receipts from business are property, in its strict meaning. In such sense it was undoubtedly employed in the majority opinion in *State Freight Tax*, 15 Wall. 284; the authority of which is weakened by the dissenting opinion, in which it was said, that the tax on gross receipts of railroad companies is a tax for the privilege of transportation. In *Lott v. Rose, supra*, it was held that a tax on the gross amount of sales of merchandise, which are gross receipts, is not a property or income tax, but an occupation or privilege tax, the amount regulated by the extent of the business done. In *Board of Revenue v. Gas Light Co.*, 64 Ala. 269, and in *State v. Board of Revenue*, 73 Ala. 65, the tax was imposed on the net income, and not on the business. The money, held and owned by the company, as the net result of the business, was the subject of taxation. An income tax stands on different principles; its value is determinable; and the rules governing such tax are inapplicable to a tax on gross receipts. One of the recognized modes of taxing business is a tax on gross receipts, which generally are not regarded as property for taxing purposes.—*State v. P. W. & B. R. R. Co.*, 45 Md. 361; *Phil. Con. Ins. v. Commonwealth*, 98 Penn. St. 48; *Sacramento v. Crocker*, 16 Cal. 120; *Warring v. Savannah*, 60 Ga. 99; *Winby v. Girardy*, 31 La. Ann. 382. *Taxable*, as used in the fourth section, qualifies and designates property, not which it may be in the power of the legislature to make liable, but which is made liable, to taxation. The value of such property must be determined, before it can be ascertained that the rate of taxation imposed exceeds the rate limited by the Constitution. By what measure or *criteria* can the business be ascertained, which so largely depends upon the vigilance, energy and skill exercised in its prosecution? The gross receipts constitute no measure of value, for they may be large, and yet the business be valueless, by reason of losses, misfortune or mismanagement. Business, though made a subject of taxation, not being capable of determinate value, is not taxable property, in the meaning of the terms employed in the constitutional limitation of the rate of taxation.

It is further insisted, that the section of the Revenue Law under consideration is violative of the Constitution, in that the rule of equality and uniformity is disregarded, by putting an arbitrary value on the gross receipts of telegraph companies, and a different value on the gross receipts of other kinds of companies. The proposition, as stated in the argument of

counsel, is, " when income or gross receipts are taxed, everybody that is taxed in this State must be taxed alike." The fallacy of the proposition consists in the assumption, that the tax on gross receipts is levied by a standard of valuation, instead of by the character and extent of the business. Whilst there is no provision of the Constitution, commanding in terms equality and uniformity, the principle should underlie and regulate the provisions of every law imposing public burdens and charges. It is not controverted, that the taxing power may select the subjects of taxation, and constitutionally classify them. Taxes should be imposed on any subject, in just proportion to the benefits and protection which such subject receives more than other subjects of taxation. The rule of uniformity does not require that all subjects be taxed, nor taxed alike. The requirement is complied with, when the tax is levied equally and uniformly on all subjects of the same class and kind. It extends to the class upon which the tax shall operate. Different occupations may be taxed at different rates, and some may be altogether exempted ; and the requirement of uniformity is not infringed, if the various classifications include all occupations similarly circumstanced and of the same kind.—*Moog v. Randolph*, 77 Ala. 597; *State Railroad Tax Cases*, 92 U. S. 575; *Worth v. Wil. & Wel. R. R. Co.*, 15 Am. & Eng. R. R. Cas. 286; *County of San Mateo v. So. Pac. R. R. Co.*, 8 Am. & Eng. R. R. Cas. 1; Cooley on Taxation, 170. The tax complained of may be onerous, and apparently unequal with the tax levied on the business of other corporations or companies. This is a matter submitted to the discretion and judgment of the legislature, and their action must be regarded as conclusive. The courts can not interfere, unless an illegal or unauthorized exaction is attempted.

A construction which limits the tax to gross receipts derived from business done between points, both of which are within the territorial limits of the State, is more restrictive than the words and purpose of the statute import. The legislature knew that the appellant company operated extensive telegraph lines from places beyond, into, and through the State, and intended to make the tax commensurate with the benefits and protection received from the government. Receiving messages at offices located in the State, for transmission, and transmitting them without, is business done in this State, though the service may not be complete until the delivery to the sendee at some place beyond its boundaries. The statute does not purport to tax gross receipts not collected in Alabama, but, by fair interpretation, includes all receipts derived from business done in this State, and actually received here, though the message may have to be delivered at, or may be sent for delivery

from, some office without the jurisdiction of the State. Though thus construed, the statute is not an unauthorized interference with inter-State commerce. This question is fully and ably considered and discussed in the following cases: *Western U. Tel. Co. v. Richmond*, 26 Gratt. 1 : *Western U. Tel. Co. v. State*, 55 Texas, 314 ; *Western U. Tel. Co. v. Mayer*, 28 Ohio St., *supra ; Port of Mobile v. Leloup*, 76 Ala. 401, and is expressly decided in respect to a tax on the gross receipts of railroad companies, though consisting in part of freights received for transportation of merchandise from the State to another State, or into the State from another, in *State Freight Tax Cases*, 15 Wall. 284; *Osborne v. Mobile*, 16 Wall. 479. Further discussion would be superfluous.

Affirmed.