(86 South. 56)

## ELIASBERG BROS. MERCANTILE CO. v. GRIMES. (2 Div. 712.)

(Supreme Court of Alabama. April 24, 1920. Rehearing Denied June 30, 1920.)

**1. Property ⬦1—Term defined.**

The term "property" is applicable to the exclusive right of the owner with respect to the use, control, and disposition of something which is capable of ownership, but in its more general and popular sense it is applicable to the thing itself, and is applicable to incomes (citing 6 Words and Phrases, Property).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property.]

**2. Constitutional law ⬦13—Words should be reasonably construed to accomplish purpose proposed.**

The words in a constitutional provision should be allowed such operation and force as

will reasonably accomplish the purposes proposed, but without extension beyond their legitimate meaning, and so as to avoid embarrassing or disabling proper governmental administration.

**3. Taxation ⬅➡51—Income is taxable "property" within meaning of constitutional rate limitation.**

The term "property," as used in Const. 1901, § 214, providing that the Legislature shall not have the power to levy a greater rate of taxation than $^{65}/_{100}$ of 1 per centum of the value of taxable property within the state, includes incomes as defined and taxed by Revenue Act of 1919.

**4. Statutes ⬅➡64(8)—Invalidity of part of income tax provision renders whole act void.**

The imposition of taxes upon incomes by the Revenue Act of 1919 is void in toto, and not only void as to levy in excess of $^{65}/_{100}$ of 1 per centum, under Const. 1901, § 214.

**5. Constitutional law ⬅➡229(2)—Taxation ⬅➡195—Exclusion of nonresidents from tax exemption is denial of equal protection.**

The denial in tax statutes of exemptions to nonresidents which are granted to residents would violate the federal Constitution in respect to the equal protection of the laws.

**6. Taxation ⬅➡54—Income not taxable under general statute as "all other property, real, personal, and mixed."**

The omnibus clause of the Revenue Act of 1919, § 5, subd. M, "all other property, real, personal, and mixed," cannot be construed as inclusive of incomes as property so as to authorize their assessment under the general law.

**7. Taxation ⬅➡61 — All other property, real, personal, and mixed, and like expressions, construed.**

Such expressions as "all other property, real, personal, and mixed," as used in Revenue Act of 1919, § 5, subd. M, following after a statement of specific items of property to be taxed, are intended to include only such other things as are ejusdem generis.

Anderson, C. J., and McClellan, J., dissenting.

Appeal from Circuit Court, Dallas County; B. M. Miller, Judge.

Bill by W. C. Grimes against Eliasberg Bros. Mercantile Company to enjoin or restrain from certifying to the state tax officials the salary earned by said Grimes as an employé of respondent. From a decree granting the relief prayed, respondents appeal. Affirmed.

The bill alleges that Grimes is a married man, with a wife as his only dependent; that he is employed by Eliasberg Bros. Mercantile Company at a stated salary; and that they are about to make returns to the state tax officials of the income or salary received by Grimes so that the same may be subjected to the income tax as provided by the Revenue Act of 1915. The bill declares the said act to be void and of no effect in so far as the income tax features are concerned, alleging the ground therefor, which fully appears from the opinion.

Keith & Wilkinson, of Selma, J. Q. Smith, Atty. Gen., and Lawrence E. Brown and Henry P. White, Asst. Attys. Gen., for appellants.

Counsel review the history of taxation in the various Constitutions of the state and the various revenue acts down to the act in question, with the insistence that the courts of this state have consistently upheld and sustained the classification of property, privileges, and the income taxes as separate and distinct forms of taxation. 38 Ala. 156; 44 Ala. 593; 80 Ala. 273, 60 Am. Rep. 99; 60 Ga. 99; 43 Mo. 479; 117 Ala. 303, 23 South. 970; 53 Ala. 570; 182 Ala. 480, 62 South. 77, Ann. Cas. 1915D, 436; 42 Ark. 62; 24 Miss. 501; 108 Atl. 43; 180 Ala. 333, 60 South. 920; 97 Ky. 394, 30 S. W. 973; 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, L. R. A. 1915B, 569, 606, 26 Ann. Cas. 1147, and note on page 1101. Income is not property within the meaning of the constitutional provision. 27 A. & E. Ency. of Law, 582; Burroughs on Taxation, 1; 102 U. S. 586, 26 L. Ed. 253; 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108; Shaffer v. Carter, 252 U. S. 37, 40 Sup. Ct. 221, 64 L. Ed. 445 (U. S. Supreme Court March 1, 1920). See generally 17 Ala. 234; 77 Ala. 597; 34 Ala. 231; 179 Ala. 629, 60 South. 913.

Hugh Mallory, of Selma, R. B. Evins, of Greensboro, and Ray Rushton, J. J. Mayfield, and H. F. Crenshaw, all of Montgomery, for appellee.

The courts have no power to supply an omission in a statute, whether made by design or mistake of the Legislature. 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940; 22 How. 290, 16 L. Ed. 342; 22 How. 185, 16 L. Ed. 251. The court cannot strike down the rate in part and uphold it in part. 203 Ala. 274, 82 South. 524. The tax on incomes is a property tax. 16 Ala. App. 476, 79 South. 150; 80 Ala. 278, 60 Am. Rep. 99; 64 Ala. 269; 182 Ala. 483, 62 South. 77, Ann. Cas. 1915D, 436. Sections 211, 214, and 217, Constitution 1901, do not apply the limitations therein contained to real property or personal property or any other restricted class. 117 Ala. 311, 23 South. 970; 73 Ala. 70, and authorities supra. It is property. 89 Ala. 461, 7 South. 386, 8 L. R. A. 369; 90 Ala. 594, 8 South. 862; 118 Ala. 143, 22 South. 627, 72 Am. St. Rep. 143, and all the authorities supra.

SOMERVILLE, J. The question of decisive importance presented by this appeal is whether or not the graduated tax of from 2 to 4 per centum imposed upon incomes by the

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Revenue Act of 1919 (Gen. Acts 1919, pp. 374–395) is in violation of section 214 of the Constitution of Alabama, which declares:

"The Legislature shall not have the power to levy in any one year a greater rate of taxation than sixty-five one-hundredths of one per centum on the value of the taxable property within this state."

[1] The solution of the major question obviously depends upon two constituent inquiries: (1) Is income "property" in the ordinary legal sense of the word? And, (2) if so, is it embraced within the meaning of the word "property" as used in this constitutional limitation?

In his very recent work on Federal Income and Profits Taxes, Mr. Holmes, quoting the language of the Supreme Court of Massachusetts in Tax Com'r v. Putnam, 227 Mass. 522, 116 N. E. 904, L. R. A. 1917F, 806, says:

"In its ordinary and popular meaning 'income' is the amount of actual wealth which comes to a person during a given period of time. At any single moment a person scarcely can be said to have income. The word in most, if not all, connections, involves time as an essential element in its measurement or definition. It thus is differentiated from capital or investment, which commonly means the amount of wealth which a person has on a fixed date. Income may be derived from capital invested or in use, from labor, from the exercise of skill, ingenuity, or sound judgment, or from a combination of any or all of these factors. One of the most recent of its definitions is 'the gain derived from capital, from labor, or from both combined' (Stratton's Independence v. Howbert, 231 U. S. 399; Doyle v. Mitchell Bros., 247 U. S. 179)."

It is clear therefore that while "income" is a complex conception of elements and units which may be, and usually are, acquired, and used or disposed of at different times, its elements and units are in the most literal sense *wealth and property*—none the less so because their possession is transient and their identity easily and quickly lost. But instability of possession and identity cannot destroy their character as "property" merely because they render impracticable their assessment in the ordinary way as property owned or possessed at the beginning of the tax year. This was clearly pointed out by Judge Stone in Board of Revenue v. Gas Light Co., 64 Ala. 269, 275:

"Property, real or personal, owned on the 1st day of January, is required to be given in by the owner for assessment and taxation that year. It is assessed to the *then* owner. The rule as to salaries, gains, incomes, is different. The tax on these is given in, assessed and paid, the year after they accrue. This for the obvious reason that they cannot be known till then. * * * In this way it may, and does often happen that taxes apparently double are paid in one year, and rightfully paid, on the *same property;* once, for the year preceding the assessment, as a *gain or profit*, and a second time as being the owner of it on the first day of the year in which it is assessed" [italics supplied].

In its strictest legal sense the term "property" is applicable to the exclusive right of the owner with respect to the use, control, and disposition of something which is capable of ownership. But in its more general and popular sense it is applicable to the thing itself. 6 Words and Phrases, pp. 5693–5699. In this sense "property" includes everything which goes to make up one's wealth or estate. Carlton v. Carlton, 72 Me. 115, 116, 39 Am. Rep. 307. In Greene v. Knox, 175 N. Y. 432, 67 N. E. 910, it was held that the salary of an office is property within the protection of constitutional provisions; and a teacher's salary was so held in Hibbard v. State, 65 Ohio St. 574, 64 N. E. 109, 58 L. R. A. 654.

In the Opinion of the Justices, 220 Mass. 613, 624, 108 N. E. 570, 574, it was said:

"A tax upon the income of property is in reality a tax upon the property itself. Income derived from property is also property. Property by income produces its kind; that is, it produces property and not something different."

In Boyd v. City of Selma, 96 Ala. 144, 148, 11 South. 393, 394 (16 L. R. A. 729), this court said:

"In its general or ordinary significance the term 'personal property' embraces all objects and rights which are capable of ownership, except freehold estates in land, and incorporeal hereditaments issuing thereout or exercisable within the same."

In section 2, Code 1852, the words "personal property" are defined as including "money, goods, chattels, things in action, and evidences of debt, deeds and conveyances." This definition, substantially unchanged, is retained in all subsequent Codes, including that of 1907.

To summarize: Money or any other thing of value, acquired as gain or profit from capital or labor, is property; in the aggregate these acquisitions constitute income; and, in accordance with the axiom that the whole includes all of its parts, income includes property and nothing but property, and therefore is itself property. This conclusion is so clear that we cannot regard it as debatable, and we have discussed the question at such length chiefly out of deference to the learned counsel for the state, who have undertaken to refute it upon reason and upon cited authority. If there is anywhere a lingering doubt upon this question it will be instantly dispelled by reading the opinions in Ludlow, etc., Co. v. Wollbrinck, 275 Mo. 339, 205 S. W. 196, 202, and in State v. Pinder (Del.) 108 Atl. 43, where it is fully discussed, both upon principle and authority. As pointed out by counsel, the Supreme Court of Georgia,

in the case of Waring v. Mayor, etc., of Savannah, 60 Ga. 93, has declared that income is not property until it is invested, or placed in a bank or locked up at home; and this conclusion is based upon the theory that—

"Property is a tree; income is the fruit; labor is a tree; income, the fruit; capital, the tree; income, the fruit; * * * but so long as it is fruit merely, and plucked to eat, and consumed in the eating, it is no tree, and will produce itself no fruit."

With all due respect to the court which approved such reasoning—and we note that Judge Bleckley concurred dubitante—we are unable to appreciate its relevancy or its value. Investing, or depositing, or locking up what is received as income, changes not its character, but merely its use; and the notion that a tree is property, while its fruit is not, cannot be sustained upon any principle of logic or common sense. The opinion refers to the earlier case of Mayor, etc., of Savannah v. Hartridge, 8 Ga. 23, as holding that income is not property, but an examination of that case shows that it merely held that a legislative grant of power to the city of Savannah to raise money "by tax and assessment upon all real and personal estate within the corporate limits of the city" did not include the power to lay a tax on occupations or incomes which had never been taxed by the state. That decision was clearly correct. In both of the Georgia cases referred to above it must be noted also that the tax under consideration was an excise tax on receipts from a business or occupation, and there is a palpable confusion of thought and of terms. Practically all courts and text-writers are agreed that an excise tax, being a tax on business or occupation, however measured, is not a tax on property. Our own court in particular has always carefully distinguished these two subjects of taxation, as we shall hereafter show.

We come now to a consideration of the second question, viz., does the term "property," as used in section 214 of the Constitution, include incomes, as defined and taxed by the Revenue Act of 1919, so as to subject their taxation to the limitation therein prescribed?

[2] The general principles which should govern courts in interpreting and construing constitutional provisions have been often stated and need not be now repeated. For present purposes it will suffice to recall what was said in W. U. T. Co. v. State Board, 80 Ala. 273, 275 (60 Am. Rep. 99), as pertinent to the present inquiry:

"Having been taught by experience that no legislative power is more liable to oppressive use than the taxing power, and having suffered evils by resting it too broadly on discretion, the people have shown, in the history of the successive constitutions, a progressive policy to restrain the power of the legislative department in this respect, and to remedy existing, and guard against apprehended, evils, by imposing limitations consistent with the public needs and the public safety. The just expositor, in interpreting the constitutional mandates and inhibitions, will consult the changes that have been made from time to time, the causes which produced them, and the mischief intended to be remedied. The words used should be allowed such operation and force as will reasonably accomplish the purposes proposed, but without extension beyond their legitimate meaning, and so as to avoid embarrassing or disabling proper governmental administration."

It is, of course, to be conceded that though "property" is a generic term, which is often used to describe all things that are capable of exclusive ownership, it is variously used also, in a more or less restricted sense, to include only one or more of the kinds or forms or species of the genus. We are here concerned with its meaning only as it relates to the subject of taxation.

In Lott v. Ross, 38 Ala. 156, 160, decided in 1861, it was said:

"Where the words 'taxable property' occur in an independent act, it would seem that they should be understood in the sense of things taxed which are susceptible of ownership or possession, unless there is something in the context which affixes to them a different meaning, or unless the plain object of the law will be defeated if they are not held to cover subjects of taxation which are not property in the ordinary sense."

This definition was quoted with approval in W. U. T. Co. v. State Board, 80 Ala. 273, 278 (60 Am. Rep. 99), and has, we believe, never been questioned. The decision in the Lott Case was that a legislative grant of power to Mobile county to levy a specified tax on the "taxable property" within the county did not authorize the imposition of a tax on the gross amount of sales of merchandise, for the reason that such a tax "is not a tax upon the goods themselves, or the fruits of the sale, but upon the business or act of selling." And it was further said that "this is not, then, a *property or income* tax, but an *occupation or privilege* tax" [italics supplied]. It is clear from this language that this court, 60 years ago, conceived of a tax on income as a property tax, and carefully distinguished it from an excise tax on occupation or business.

A chronological review of the several limitations upon the taxing power of the state, as adopted in successive constitutions, will be found in W. U. T. Co. v. State Board, 80 Ala. 273, 60 Am. Rep. 99, and in Capital City Water Co. v. Board of Revenue, 117 Ala. 303, 23 South. 970. The first limitation which included personal property is found in the Constitution of 1868, art. 14, § 1, providing that "all taxes, levied on property in this state, shall be assessed in exact proportion to the

value of such property." This identical clause was adopted in the Constitution of 1875, art. 11, § 1, along with the new provision (article 11, § 4) that "the General Assembly shall not have the power to levy, in any one year, a greater rate of taxation than three-fourths of one per. centum on the value of the taxable property within this state." In that Constitution also was incorporated the provision (section 6, art. 11) that · "the property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate." This clause was a substantial repetition of section 4, art. 13, of the Constitution of 1868. These several limitations on the taxing power were carried into the Constitution of 1901 in totidem verbis. As each of them uses the word "property" as the subject of taxation, obviously in the same sense, a judicial interpretation of that word in any of them will be equally applicable to all.

The taxation of incomes for revenue is not a new policy in this state. The first tax on annual gains, profits, or incomes and salaries, was levied by the Revenue Act of 1866 (Laws 1865–66, p. 1). In 1867 the same provision was adopted (Laws 1866–67, p. 259). In 1875 (Laws 1874–75, p. 1) the tax was limited to salaries; and in 1876 (Laws 1875–76, p. 46) it was again levied on "all salaries, gains, incomes and profits for the preceding year." After discussing the application of this tax to corporations, the contention being made by the petitioning corporation that this revenue provision did not affect corporations but only natural persons, Judge Stone said:

"If this be true, then natural persons are taxed 'upon their annual gains, profits or incomes,' and corporations, or . artificial persons, are not. This would violate section 6, article 11, of the Constitution of 1875, which ordains that 'the property of private corporations, associations and individuals of this state, shall forever be taxed at the same rate.'" Board of Revenue v. Gas Light Co., 64 Ala. 269, 277.

In a later case, on a petition by the L. & N. Railroad Company to vacate certain assessments made upon its income under the revenue acts from 1874 to 1881, it was held that, for reasons not here pertinent, those acts were not intended to be, and could not be, applied to the income of railroads passing through several counties. The Board of Revenue insisted upon the application of section 6, art. 11, of the Constitution of 1875, and Judge Stone again said:

"Under this clause of the Constitution it is contended that, inasmuch as the incomes of individuals—natural persons—are taxed, it is a constitutional duty to tax, at the same rate, the incomes of corporations. Such is undoubtedly the case, and the Legislature, when they assert the power, cannot tax one class at a higher rate, and the other at a lower rate. Mayor v. Stonewall Ins. Co., 53 Ala. 570. But * * * when the Legislature, through a failure to levy, leave a species of property free of taxation, by providing no machinery which can be· adapted to the. assessment, the courts of .the country are powerless to remedy the evil" [italics supplied]. State v. Board of Revenue, 73 Ala. 65, 70.

Conceding that these statements of Judge Stone were. dicta, in the strictest sense of that term, and therefore not perforce to be· regarded as a settled definition of the word "property" as used in the same limitation when carried into the Constitution of 1901, they were nevertheless deliberate judicial interpretations, pertinent to. the subject in hand, and appropriate as bases for the conclusions announced; and we are bound to presume that they reflected the seasoned opinion not only of Judge Stone, but also of the other members of the court.

In a still later case, holding that a tax laid on the gross receipts of a telegraph company at the rate of 2 per centum was an occupation or privilege tax and not a tax on property, and was therefore not in violation of the constitutional provision that "all taxes levied on property in this state shall be assessed in exact proportion to the value of such property," Judge Clopton, speaking for the court, discussed at length the meaning of "property" as used in that limitation, and carefully and pointedly distinguished between an income or property tax and a tax on occupation or privilege.

He said:

"With a knowledge of the various subjects of taxation; of the well defined distinction between property, when made liable to taxes, and other subjects ,of taxation; and that among such other subjects were occupations, privileges, business, and licenses, which, in the nature of things, are incapable of determinate value— valuation was adopted as the basis and measure of assessment. The limitations, by their terms, signify an intention that the provisions shall be only applicable to property, the value of which is capable of definite ascertainment by .the officer whose duty it is to make the assessment, and that all other subjects of taxation should be excluded from their operation." And' further: "In Board of Revenue v. Gas Light Co., 64 Ala. 269, and in State v. Board of Revenue, 73 Ala. 65, the tax was imposed on the net income, and not on the business. The money, held and owned by the company as the n⸗ result of the business, was the subject of taxation. An income tax stands on different principles; its value is determinable; and the rules· governing such tax are inapplicable to a tax on gross receipts" [italics supplied]. W. U. T. Co. v. Board of Revenue, 80 Ala. 278, 60 Am. Rep. 99.

The language which we have quoted from; the opinions in the three cases supra exhibits, we think, a settled consensus of judicial un· derstanding that the term "property," or· "taxable property," includes all property capable of ownership whose value can be accurately determined, and that incomes are

such property. Those opinions were published in the official reports, and we must presume that they were known and understood by the profession and by the members of the Constitutional Convention of 1901.

It is supposed by counsel for the state that this repeatedly expressed conception of income as property within the constitutional limitations on taxation was dissipated, and currency given to a contrary view, in the case of Capital City Water Co. v. Board of Revenue, 117 Ala. 303, 23 South. 970. We have subjected the opinion in that case to the most rigid scrutiny, and fail to find in it any confirmation of this contention. It was the settled law of this state that a tax laid on the gross receipts of a business is an occupation tax, and not a property tax, within constitutional limitations. Subdivision 5, § 454, Code 1886, levied a tax on such receipts, "after deducting the expenses of carrying on such business." It was held that such a deduction did not change the character of the tax. Evidently the court was on doubtful ground, for two of its ablest members. Justices McClellan and Head, dissented. Justice Haralson, the writer of the opinion, said:

"This point, however, is urged upon the further contention that the tax imposed in this case *is an income tax*, susceptible of definite ascertainment as to its amount, and therefore it is *property*. [Then, following an analysis of the revenue provision.] Subdivision 5 of said section 454 must be construed, therefore, as a provision for an occupation or privilege tax, and not as a tax proper on property; and the clause in said subdivision, 'after deducting the expenses of carrying on said business,' as indicating no more than the method adopted by the Legislature in ascertaining the extent to which the occupation or business has been enjoyed and for which it ought to be taxed."

Reference had been previously made in the opinion to the former tax on salaries, gains, incomes, and profits, and it had been remarked that decisions construing them were correct, and not in conflict with the present ruling. Counsel for the taxpayer cited the three cases in 64th, 73d, and 80th Alabama Reports, and the last was cited as authority in the opinion. Justice Haralson evidently had read them, and had them freshly in his mind. So far from contradicting them he approves them, and painstakingly shows that the tax he was dealing with was a different kind of tax, and governed by different principles.

It is true that the same justice remarked, incidentally, in the later case of Goldsmith v. Mayor, etc., of Huntsville, 120 Ala. 182, 24 South. 509, that "a tax on gross amount of sales is not a tax on the goods themselves, or on the fruits of the sales, but upon the business of selling; is not a property tax, but an occupation or income tax." But the use of the term "income" in that connection, in view of the learned judge's sound discriminations in his previous opinion, can only be regarded as a casual inadvertence, perhaps a mere lapsus pennæ.

Another contention, vigorously pressed by counsel for the state, is that a study of our revenue acts and codes, from 1866 to 1886, inclusive, will show a legislative understanding and assertion that salaries, gains, incomes, and profits are not property, in view of repeated classifications placing them among the schedule of "other subjects of taxation," following the schedule enumerating the items of taxable property, and including "all other property, real or personal, not otherwise specified." And it is argued that such classifications must have been known to the constitution makers, and must have qualified their understanding of the scope of the term "property" as the subject of tax limitations.

This is a matter worthy of consideration, and has been considered by this court in construing statutes, but never, so far as we are advised, in construing the constitutions which govern them. However, the force of the argument is dissipated here by the irregularity of the practice. In the Acts of 1866, where "gains, profits, or incomes" were first taxed, there is a general designation of "subjects" taxed, in which the item of corporate dividends, earned but not distributed (which are certainly taxable property), is placed among the occupations, and incomes, etc., are taxed in a separate and distinct section, apparently unrelated. This arrangement is followed in the Code of 1867, section 434 specifying the "subjects" in general, and section 435 dealing with incomes. The same arrangement is followed in the act of 1868 (Laws 1868, p. 304). There was nothing in all of this to indicate that the constitution makers of 1868 intended to impose the taxing limitations of that instrument only upon property which might be owned by a taxpayer at the usual date fixed for assessments, even though that was the usual basis for assessment. That was the only difference between the items of property going to make up a complete income and other items of property. The items of an income are assessed annually as income because it is impracticable to assess them in any other way, and not because they are, when acquired, different in kind or substance from money or other property owned on the day for making assessments. For this reason it is natural, and, indeed, inevitable, that incomes, as subjects of taxation, should be separately classified and treated; and it would be hardly significant if for administrative convenience, based upon practical but entirely superficial analogies, incomes should be placed in the schedule of occupation taxes.

The act of 1875 schedules numerous items as "property," and places incomes in the schedule of "other subjects of taxation,"

204 ALA.—32

along with occupations. The act of 1876 places incomes in the schedule of "property," and places dividends, earned but not divided, in the schedule of "occupations"—an arrangement followed also in the Code of 1876. This act and its codification exhibit one fact of considerable significance. Closely following, as they did, the adoption of the Constitution of 1875, which for the first time in our history limited the rate of property taxation—specifically, to three-fourths of 1 per centum—they reduced the previous rate of 1 per centum on incomes to the new constitutional limit of three-fourths, which it never again exceeded. This, it seems fair to assume, was a legislative recognition of the status of incomes as taxable property. The act of 1883 (Acts 1882–83, p. 72) omits the item of incomes entirely, but places the items of dividends, earned but not divided, in the schedule of property.

The act of 1885 (Acts 1884–85, p. 3) places incomes in the schedule of taxable "subjects," following the schedule of property, and this arrangement is followed in the Code of 1886, after which incomes do not again appear as a subject of taxation.

Such tergiversations do not suggest any fixed conception of incomes as a subject of taxation. Certainly the failure of the constitution makers of 1875, or 1901, to expressly mention incomes as a class of property to be protected by limitations, cannot be attributed to their recognition and adoption of a legislative conception of incomes as being occupations and not property. The merely mechanical collocation of the subjects of taxation, if uniform, might be some aid in resolving a doubtful application of the revenue law, but it could hardly be accepted as a restriction upon the scope of a constitutional limitation which would otherwise, in ordinary meaning, bear no such restriction.

We do not consider it of any importance to inquire whether our constitution makers entertained a definite conception of income as an aggregation of sums of money, which they specifically desired to protect in the aggregate. If they regarded money as property—and it is inconceivable that they could have regarded it otherwise—they must have entertained a general purpose to protect it from excessive or unequal taxation, by whatever name it might be called, and by whatever scheme it might be taxed. Money, when received as income, is visible, tangible, concrete, and that, in its last analysis, is what is taxed. It is of no consequence that items of money are added together, and the sum, reduced by the cost of its acquisition, is designated as income. That indicates merely the mode and extent of its taxation. Nor is it of any consequence that the money thus taxed has left the hands of its quondam owner, however speedily; for the state has the inherent power to tax property owned at any time during the tax year, though it has not always seen fit to do so.

A constitution, properly conceived, deals with basic principles and policies, and omits specific applications. Our constitutions limit the rate of taxation of property. The purpose in view, as observed by Judge Clopton in W. U. T. Co. v. State Board, 80 Ala. 277, 60 Am. Rep. 99, was "the protection of the property of the citizen against forced contributions or legislative plunder." The candid and impartial student of the subject will find it difficult, if not impossible, to discover, in the face of an expressed solicitude for the protection of property—including money—owned at the beginning of a tax year, an indifference to the like protection of money received and owned at some previous time. The reason for protection in the one case is as compelling as it is in the other. The lack of protection in the one case leads to the same consequences that it leads to in the other. We think that the policy and the purpose of the Constitution, in harmony with its terms, equally embraces both.

We do not consider it necessary, in view of what we have already said, to discuss at length the development of income taxation under constitutional limitations, or without them, in other states, or to review in much detail the judicial decisions and the statements of text-writers on the subject. The only cases which oppose our view are Waring v. Mayor, etc., of Savannah, 60 Ga. 93, and Glasgow v. Rowse, 43 Mo. 479. They were respectively decided 40 and 50 years ago, and though their theory that incomes are not property has been followed by several of the earlier text-writers, their reasoning is faulty, and their fallacy stands condemned by modern judicial thought. The 43d Missouri Case has been recently reviewed at length in Ludlow, etc., Co. v. Wollbrinck, 275 Mo. 339, 205 S. W. 196, and although it was followed by a majority, consisting of four of the seven justices, chiefly, as it would seem, upon the principle of stare decisis, a vigorous dissenting opinion was filed by Justice Faris, concurred in by two of his Associates, which is, to our mind, an unanswerable indictment of the theory that income is not property within the meaning of constitutional safeguards. It is true that the cases of Glasgow v. Rowse (Mo.) and Waring v. Mayor, etc., of Savannah (Ga.) have been cited as authority by this court, but only to the proposition that "property," as designated in limitations on the taxing power, does not include occupations, privileges, and franchises. Citing a case upon one point is never to be regarded as an approval of the case as to other points not under consideration.

In State v. Pinder (Del.) 108 Atl. 43, it was contended by the taxpayer that a constitutional provision limited the taxing power to "property," and that income, not being prop-

erty, was not taxable at all. After reviewing the cases cited to sustain that contention, including the Georgia and Missouri cases, the court said, per Pennewill, C. J.:

"In the absence of any authority on the subject, this court would unhesitatingly hold that income is property within the meaning of section 1, art. 8, of our Constitution, and therefore subject to taxation or exemption; shall we hold differently because the court, in a Georgia case, decided in 1850, declared that income was not property within the meaning of the taxation laws of that state then before the court? We think the distinction drawn by the Georgia court was very technical, if not illogical, because, if income is property for other purposes, why should it not be for the purpose of taxation? It is the subject of larceny because it is property, and in these times is universally considered property."

In the noted case of Pollock v. Farmers' L. & T. Co., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108, Id., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759, the Supreme Court of the United States held, on rehearing, that a tax on the income derived from real or personal property is a direct tax on the property itself, which the federal Constitution prohibited Congress from levying unless it was apportioned among the several states according to population. That case is not strictly in point, of course, for present purposes, but it is persuasive to show the advanced, and now generally accepted, modern view as to the nature of income and the theory of its taxation.

It is interesting to observe that in all of those states excepting Georgia and Missouri, where a graduated or unequal tax has been laid on incomes, express authority is found therefor in their constitutions, side by side with the general provisions for uniformity or equality. We mention, among others, Kentucky, Massachusetts, Oklahoma, South Carolina, and Wisconsin, and refer to the following authorities: Levi v. City of Louisville, 97 Ky. 394, 30 S. W. 973, 28 L. R. A. 480; Opinion of the Justices, 220 Mass. 613, 623, 108 N. E. 570; Trefney v. Putman, 227 Mass. 522, 116 N. E. 904, L. R. A. 1917F, 806; Alderman v. Wells, 85 S. C. 507, 67 S. E. 781, 27 L. R. A. (N. S.) 864, 21 Ann. Cas. 193; State v. Frear, 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, L. R. A. 1915B, 569, 606, Ann. Cas. 1913A, 1147.

We attach no importance to the classification of taxable subjects as found in some of the text-books, since they are obviously founded upon a failure to distinguish between an income tax and an occupation or privilege tax. Mr. Black, in his work on Income and Other Federal Taxes, §§ 35–38, says that an income tax is not levied upon property, or trade or business, or the practice of a profession, but upon the acquisitions of the taxpayer arising from one or more of these sources; and he distinguishes income taxes from license, occupation, and excise taxes. It would seem, therefore, that he regards an income tax as strictly sui generis. He offers no reason for the dictum that the pecuniary acquisitions of a taxpayer are not property.

[3] It is not suggested that the tax laid on incomes by our Revenue Act of 1919 is an occupation or a business or a privilege tax, or that it is anything but an income tax in the comprehensive sense in which it has been heretofore defined and considered. It must, therefore, be held to be a direct imposition upon "property" as such, as that term is used in section 214 of the Constitution of Alabama; and, being in excess of the maximum rate of $65/100$ of 1 per centum therein prescribed, it is plainly and beyond any reasonable doubt offensive to that limitation, and its provisions must, in accordance with our bounden duty in the premises, be pronounced null and void.

[4] It is the view of the Chief Justice that the income provision, though void as to its levy in excess of $65/100$ of 1 per centum, may nevertheless be upheld as a valid levy pro tanto. In our desire to avoid the complete nullification of this important legislative provision, we have given serious and anxious consideration to that suggestion. We have, however, reached the conclusion that to declare it law in that amended form would be in effect nothing less than judicial legislation, and would be a dangerous departure from the settled rules that govern courts in respect to such legislation. The matter of its rate permeated every part and entered into every aspect of the levy. It is clear that the Legislature did not intend to tax all incomes alike, and whether they would have allowed any exemptions at all, or in what amounts, under a flat-rate levy of $65/100$ of 1 per centum, and how they would have dealt with other features of the scheme, we cannot say except as a matter of the sheerest conjecture. If the matter were not complicated by these considerations, it is possible that a way could be found, under the decision of Wiley v. Parmer, 14 Ala. 627, to save the levy pro tanto. In that case the point decided was that a nonresident taxpayer could recover the excess paid by him over and above the amount paid by residents, under an act levying a specific tax of $2 on slaves owned by nonresidents, while the slaves of residents were taxed only one half of that amount. The suit was only for the excess, and it was not ruled that the levy was valid pro tanto, though the opinion might perhaps support such an implication.

But, even so, the difficulties we encounter here were wholly absent there. It is better that the state should endure the loss and delay which must follow our ruling than that courts should exercise their at least doubtful discretion in adjusting, mending or

reconstructing unconstitutional legislation. The theory of judicial amendment is exceedingly attractive to our minds, and in accordance with our natural inclinations, but it leads to quagmires of trouble into which we cannot safely enter.

[5] It may be added, too, that if this court should sanction this judicial amendment it would be immediately confronted with another constitutional difficulty, which it is conceded exists, viz. the denial of exemptions to nonresidents which are granted to residents, thus violating the federal Constitution in respect of the equal protection of the laws, as held by the United States Supreme Court in the very recent case of Travis v. Yale, etc., Mfg. Co., 252 U. S. 60, 40 Sup. Ct. 228, 64 L. Ed. 460, and a new and doubtful separation of bad from good would be required.

[6, 7] Answering another contention that has been made, we do not think the view is tenable that the omnibus clause in the Revenue Act of 1919, sub. M, § 5, viz. "all other property, real, personal and mixed," following, as it does, a statement of specific items of property to be taxed in the ordinary way, and at the ordinary rate, can be construed as inclusive of incomes as property, so as to authorize their assessment under the general law. In the first place, the special treatment of incomes in separate sections negatives the idea of its inclusion in any general clause like that; and, in the second place, it is a familiar rule in the construction of such clauses that they are intended to include only such other things as are ejusdem generis. Martin v. State, 156 Ala. 89, 47 South. 104. In accordance with this rule, it is held that express provision must be made by the Legislature for the assessment of incomes. Forman v. Board of Assessors, 35 La. Ann. 825; 37 Cyc. 810, b.

It results that the petition to enjoin the enforcement of its provisions is grounded in equity, and the demurrer, for want of equity, was properly overruled.

The decree of the circuit court will be affirmed.

Affirmed.

SAYRE, GARDNER, THOMAS and BROWN, JJ., concur.

ANDERSON, C. J., dissents in part only.

McCLELLAN, J., dissents.

THOMAS, J. I concur in the opinion of the majority, but desire to add the following:

The history of the only amendment or change made in section 211 of the Constitution of 1901 sustains and confirms the decision in this case.

The report of the Committee on Taxation in the Constitutional Convention of 1901, in reporting this section, reported that the only amendment to the article of which section 211 formed a part was to add the provision that "no tax shall be assessed upon any debt for rent or hire of real or personal property while owned by the landlord or hirer during the current year of such rental or hire, if such real or personal property be assessed at its full value."

This committee further reported that this assessment was intended to meet a then recent decision of this court. The style of the case was not given, but it is well known to the bench and bar of this state, and was the case of L. D. Lusk v. State of Alabama. It involved the question as to whether or not notes for the rent of land were taxable if the land itself was already taxed. This court held that they were, and that it was not double taxation, nor a tax on the land in excess of the constitutional limit. The correctness of that decision was doubted by many members of the legal profession, and one of the justices of this court dissented. The opinion of the court in that case was never officially reported, and not even reported in the Southern Reporter. The said Committee of the Constitutional Convention, composed of some of the most learned lawyers in the state, disagreed as to the correctness of the decision, and in their report said the committee conceived such a tax upon the rent of land the "very worst form of double taxation," and that the amendment was intended to prevent such taxation in the future. That report was adopted by the Constitutional Convention without a dissenting vote.

While, of course, the Lusk Case may be different from this case, in that there the tax was levied upon choses in action or solvent credits, and here the tax is upon income as property, yet the fundamental constitutional questions as to double taxation and excessive rate of taxation are very similar. If that amendment to section 211 was intended to prevent the double and excessive taxation imposed upon Dr. Lusk, and did so prevent it, then, a fortiori, it prevented much of the income tax levied, or attempted to be levied, by the act in question.

The proposed income tax provisions of the statute before us unquestionably attempted to levy a tax upon the rents of land when and after the land is taxed; this is what the constitution makers intended to prevent. If I may be pardoned for making the reference, the writer of this concurrence was of counsel for Dr. Lusk in that case, and he was then, and has ever since been, of the opinion that the opinion of this court in the Lusk Case was in error. There can be no doubt that the constitution makers intended by the amendment quoted above to cure that error, and prevent the repetition of similar taxes being thereafter levied. To my mind there is no doubt that if the tax sustained in the Lusk Case was prevented by the amendment

of the Constitution, then the tax here levied against incomes which are received as rent from land is prevented. Calling one a tax upon solvent credits and the other an income tax can make no difference.

ANDERSON, C. J. (dissenting). While I agree, for reasons set forth in the opinion of SOMERVILLE, J., that the tax in question is controlled by section 214 of the Constitution of 1901, and cannot exceed $^{65}/_{100}$ of 1 per centum, I am of the opinion that the provision of the act under consideration is only void as to the excess, and is not invalid in its entirety, as was held by the trial court. The excess can be stricken without impairing the purpose or integrity of the provision and without violating the legislative intent. The elimination of the rate in excess of constitutional limitation narrows rather than extends the operation of the provision. As the Legislature levied 2 per centum and over in certain instances, it unquestionably intended to levy as much as .65 of 1 per centum. Wiley v. Parmer, 14 Ala. 627; Ensley v. Cohn, 149 Ala. 316, 42 South. 827; Wilkinson v. Stiles, 200 Ala. 279, 76 South. 45; State v. Davis, 130 Ala. 148, 30 South. 344, 89 Am. St. Rep. 23, and cases there cited. The case of Wiley v. Parmer, supra, involved a tax in excess of constitutional restrictions, and the taxpayer was relieved from only so much of said tax as exceeded the limit. This case has never been overruled, but has been several times cited. But, as an original proposition, I would not have felt warranted in striking down this solemn legislative provision in its entirety, as it is conceded to be lawful and valid, except in so far as the rate exceeds constitutional limitations as fixed by section 214.

The case of Goodwin v. Birmingham, 82 South. 524,[1] cited and relied upon by counsel for appellee, is in no sense in conflict with this holding. That case involved an election for a 25 year tax for school purposes, and the issuance of bonds covering said period, etc., whereas, under the law, the tax could not have been levied except for a period of 10 years; and this court held, and properly so, that it could not say that the voters would have favored the tax levy, bond issue, etc., had they been given only 10 instead of 25 years within which to make school improvements and meet the incurred obligations.

It appears from the opinion of the majority that the elimination of the excess

---

[1] 203 Ala. 274.

might do violence to the legislative intent and result in a judicial amendment of the act. In reply to this suggestion, I merely quote the last legislative expression as found in section 424 of the act, and which is conclusive on the court as to the legislative intent, notwithstanding the question of separability is one for the court, and to my mind the elimination of the excess would leave a complete enactment at .65 of 1 per centum. Said section reads as follows:

"If any section, clause, provision or portion of this act shall be held to be invalid or unconstitutional by any court of competent jurisdiction, such holding shall not affect any other section, clause, provision or portion of this act which is not in and of itself unconstitutional."

I therefore dissent from striking down the provision in its entirety.

McCLELLAN, J. (dissenting). The majority of the court completely annul the income tax feature of the Revenue Act of 1919. I dissent from that conclusion. My judgment is that the income tax feature is only partially inoperative, not wholly invalid. While I agree that a tax on money or property held in the possession of the taxpayer at the end of the income tax year is a property tax within the meaning of the limitation fixed in section 214 of the Constitution, I cannot agree that a tax levied on such part of the whole of the income that has been expended or exhausted by the earner during the tax year is or can be a tax on property within the purview of that section. Such expended or exhausted part of the income of the earner is not property held or possessed by him in such manner as to be subject to a property tax. It cannot be seized, condemned, or confiscated, and is hence not "taxable property," within the deliberately pronounced definition of that term as set forth in Western Union Telegraph Co. v. State Board, etc., 80 Ala. at page 278. It is my opinion that the income tax levied is inoperative only to the extent that it exceeds the rate fixed by section 214 of the Constitution when imposed on income actually held by the taxpayer at the end of the tax year.

But assuming that the majority opinion is correct in holding that the entire income of the earner is property within the limitation of section 214 of the Constitution, I concur with Chief Justice ANDERSON in the view expressed in the foregoing opinion, namely, that it is only invalid to the extent that the rate fixed is in excess of the limitation prescribed by the Constitution.