Appellees, a group of individuals who either are the owners of or have an ownership interest in existing retail businesses in Elmore County, filed a declaratory judgment action against appellants, McDonald's Corporation, Aronov Realty Company, K-Mart Corporation, and the Industrial Development Board of Elmore County, regarding the validity of two proposed bond issues established pursuant to Code 1975, §§ 11-20-30 to -50 (1977 County Board Act). The bond issues were authorized by the Industrial Development Board of Elmore County. The two projects involve retail facilities. One project is a McDonald's Restaurant and the other is a retail shopping center comprised of various retail mercantile stores including a K-Mart Store.
The issue on appeal is the same issue that was before the trial court — whether the two projects are within the definition of "project" under the 1977 County Board Act. The trial court held that the Act does not include as a "project" the "planned expansion of retail facilities."
Appellants submit that the trial court incorrectly limited the scope of the 1977 County Board Act and that the court should not "second-guess" the Industrial Development Board of Elmore County as to whether the projects would have been undertaken regardless of the bond issue. The position of the appellants is that the Legislature intended for retail businesses to make use of the 1977 County Board Act.
Appellees, on the other hand, contend that the Legislature did not intend for the 1977 Act to finance the construction of retail facilities. In addition, appellees submit that the 1977 Act must be interpreted along with the 1949 Cater Act (Code 1975, § 11-54-81 (a)), the 1951 Wallace Act (Code 1975, §§11-54-20 to -32) and the 1961 County Act (Code 1975, §§ 11-20-1
to -13). The trial court agreed with the appellees and held as follows:
 "The acts provide for city board, city, county and county board issuance of industrial development bonds. There seems to run throughout the four acts a theme of inducing, attracting and persuading businesses, and particularly those of an industrial or manufacturing type, to locate in this state. The stated objective was to promote industry, develop trade and further the use of the agricultural, natural and human resources of the state. The need for these acts was brought about during the 1940's and 1950's when citizens of this state realized mechanization of farming, logging and other local operations would result in an abundance of raw products and resources and an available labor supply, without the means of converting the raw products and resources into finished products and without providing jobs for the displaced workers. The Court is well aware and judicially knows that interest rates for conventional borrowing and financing have risen sharply in the last few years, even to the point of drastically curtailing building expansion in the business and private sectors. The successful operation of any business requires that all building and operating costs, including the payment of interest for expansion purposes, be kept to a minimum. It appears to the Court from the evidence in this case, and a review of the applicable law, that the defendants McDonald's and K-Mart are attempting to obtain lower interest rates for already planned expansion, through the vehicle of the 1977 Act, which was intended to induce and persuade other businesses, which might not intend to do so, to locate in this state. This Court cannot find that the 1977 Act was intended by the Legislature of the State of Alabama to allow retail businesses, such as McDonald's and K-Mart, to finance their planned expansions by means of taxfree industrial development bonds. The Court specifically finds that the projects of defendants Aronov Realty Company, McDonald's Corporation and K-Mart Corporation in this case are not legally authorized under the 1977 Act."
We affirm.
Alabama Code, 1975 § 11-20-30, defines "project" as: *Page 1078 
 "(5) PROJECT. Any land and any building or other improvement thereon and all real and personal properties deemed necessary in connection therewith, whether or not now in existence, which shall be suitable for use by the following or by any combination of two or more thereof:
 "a. Any industry for the manufacturing, processing or assembling of any agricultural, manufactured or mineral products;
 "b. Any commercial enterprise in storing, warehousing, distributing or selling any product of agriculture, mining or industry; and
 "c. Any enterprise for the purpose of research, but does not include facilities designed for the sale or distribution to the public of electricity, gas, water or telephones or other services commonly classified as public utilities."
Obviously, subsections a. and c. do not apply; thus, the question before this Court is whether the Legislature intended for retail enterprises such as McDonald's or K-Mart to be considered as "[a]ny commercial enterprise in storing, warehousing, distributing or selling any product of agriculture, mining or industry."
 "The proviso, here under review, is by no means so clear in its meaning as not to need interpreting. We proceed, then, to ascertain the legislative intent, which is the guiding star in construing a statute. . . . One approach in determining the legislative purpose and intent is to examine the prior law, and related statutes, on the subject embraced in the statute being construed." State v. AAA Motors Lines, Inc., 275 Ala. 405, 407-08, 155 So.2d 509 (1963).
Appellants submit that this Court should examine the 1977 County Board Act separate from the other "projects for promotion of industry and trade acts," i.e., the Cater Act, the Wallace Act, and the 1961 County Act. We disagree, because all four acts have a common purpose and the means provided to effectuate this purpose are identical. These sections of the Code are in pari materia; and, as a general rule, such statutes should be construed together to ascertain the meaning and intent of each. Locke v. Wheat, 350 So.2d 451 (Ala. 1977);League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167
(1974).
The purpose of the 1977 County Board Act, like that of the Wallace Act, the Cater Act, and the 1961 County Act, is to bring industry and thus jobs to Alabama. This legislative intent is expressed in the respective statutes. In the Cater Act, § 11-54-81, the Legislature stated:
 "It is the intent of the legislature by the passage of this article to authorize the incorporation in the several municipalities in this state of industrial development boards to acquire, enlarge, improve, replace, own, lease and dispose of properties to the end that such boards may be able to promote industry, develop trade and further the use of the agricultural products and natural and human resources of this state . . . by inducing manufacturing, industrial, commercial and research enterprises: (1) To locate in this state, (2) To enlarge, expand and improve existing operations. . . ."
In the Wallace Act, § 11-54-21, the Legislature stated:
 "It is the intent of the legislature by the passage of this article to authorize municipalities to acquire, own and lease and, in connection with any such acquisition, to enlarge, improve and expand projects for the purpose of promoting industry and trade . . . by inducing manufacturing, industrial, commercial and research enterprises to locate in this state or to expand and enlarge existing enterprises. . . ."
In the 1961 County Act, § 11-20-2, the Legislature stated:
 "It is the intent of the legislature . . . to authorize counties to acquire, own and lease projects for the purpose of promoting industry and trade by inducing manufacturing, industrial and commercial enterprises to locate in this state or to expand, enlarge or modernize existing enterprises or both. . . ." *Page 1079 
In the 1977 County Board Act, § 11-20-31, the Legislature stated:
 "It is the intent of the legislature . . . to authorize the incorporation in the several counties in this state of public corporations to acquire, enlarge, improve, replace, own, lease and dispose of properties to the end that such corporations may be able to promote industry, develop trade and further the use of the agricultural products and natural and human resources of this state. . . ."
All of these acts express a similar intent and purpose, that is, to give a municipality or county the power to offer inducements to industrial, manufacturing, commercial, and research enterprises to either locate in Alabama or expand existing facilities in this state. These acts authorize municipalities and counties to acquire industrial, manufacturing, commercial, and research projects and to issue bonds to finance the cost of such acquisitions. Each of the four acts grants this authority to a different body. The Cater Act gave municipalities the authority to incorporate industrial development boards to carry out the goal of offering inducements. The Wallace Act gave municipalities the authority to carry out the goal of offering inducements as an entity without the establishment of a separate board. In order to give counties the same opportunities as municipalities, the legislature gave counties the same power of creating inducements for location or expansion of manufacturing, industrial, and commercial enterprises. The 1961 County Act gave counties the authority to offer inducements, while the County Board Act of 1977 gave the counties the same authority as municipalities, that is, the power to incorporate a separate industrial board to carry out the inducements to the specified groups. Therefore, the Cater Act, the Wallace Act, the 1961 County Act, and the County Board Act of 1977 are each a part of a legislative plan to give municipalities and counties the authority to offer inducements to industrial, manufacturing, commercial, and research enterprises either by way of industrial boards or as a governmental entity.
This Court is of the opinion that the intent of the Legislature in the passage of the 1977 County Board Act, as well as the Cater Act, the Wallace Act, and the 1961 County Act, was not to give retail business establishments desiring to expand their operations within the state such as McDonald's and K-Mart, ready access to lower cost financing than other retail businesses; the legislative intent was to induce, attract, and persuade businesses of a non-retail nature, particularly industrial, mining, manufacturing, and research enterprises, to locate here or to expand existing facilities in this state.
Our conclusion is supported by the fact that the Legislature has enacted various pieces of legislation which specifically provide inducements for retail enterprises such as McDonald's and K-Mart. Some of these acts were passed before the 1977 County Board Act and some were passed subsequent to it.
For example, in the Airport Authority Act, the Legislature specifically authorized the authority "[to] construct, acquire, establish, improve, extend, enlarge, reconstruct, equip, maintain and repair buildings, structures and facilities, suitable for use as manufacturing plants, industrial plants,retail shopping areas or centers . . . or for the conduct of any lawful business at, upon or adjacent to any airport. . . ." Code 1975, § 4-3-11 (emphasis added). Also, the Legislature enacted the Birmingham-Jefferson County Commercial Development Authority Act, Act No. 80-648, Acts of Alabama 1980 (uncodified), which in its definition of "project" specifically included "a shopping center or similar facility suitable for use by two or more commercial enterprises engaged in any business, trade, profession, occupation or activity." In Code 1975, § 11-94-2, the Legislature granted to port authorities the power "to develop waterfront property for recreational, transportational, agricultural, industrial and commercial purposes." This Act included in its definition of the term "projects" motels, restaurants, coffee shops, and stores. See Code 1975, § 11-94-1.
Finally, Act No. 4, Acts of Alabama 2d Special Session 1956 (uncodified), and Act *Page 1080 
No. 337, Acts of Alabama 2d Special Session 1971 (uncodified), granted authority to municipalities to acquire, own, and lease, projects for the purpose of promoting trade by inducing commercial enterprises to locate new projects in this state. "Projects" were defined in these two acts as any land, building, or improvement thereon suitable for use by commercial enterprises which provide one or more of the following services: hotel services, including food or lodging or both, convention, and meeting facilities.
Clearly, these acts show that the Legislature has enacted legislation designed to include retail enterprises. Appellants' contention that retail establishments similar to McDonald's and K-Mart were intended by the Legislature to be included in the definition of "project" in the County Board Act is a persuasive argument because a retail establishment could fall under the broad term "commercial enterprise" as that term is used in the County Board Act, if that term is viewed independently from the rest of the statute and the history of the legislation. However, we must view the statute in a manner which best comports with the intent of the Legislature. Thus, we must interpret the term "commercial enterprise" as it is used in the statute by reference to the entire statute and we must examine the history of the legislation, which shows the County Board Act to be a part of the legislative plan to bring industry into this state. The Legislature could have specifically included the word "retail" in its definition of "project" but it did not. The Legislature passed the 1977 County Board Act, including its definition of "project," to carry out its purpose of enhancing the use of Alabama's resources in order to provide economic development for the benefit of its citizens. The Legislature chose its words carefully and we must conclude that the Legislature did not intend for retail establishments such as McDonald's and K-Mart to benefit from this legislation. If it so desires, the Legislature can enact legislation for the benefit of retail establishments in future sessions.
Appellants and appellees have presented to this Court cases from other jurisdictions to support their respective positions. See Day v. Development Authority of Adel, Georgia, 248 Ga. 488,284 S.E.2d 275 (1981); State v. Jacksonville Port Authority,305 So.2d 166 (Fla. 1974); State ex rel. the Ohio CountyCommission v. Samol, 275 S.E.2d 2 (W.Va. 1980). While these are helpful, we view the issue to be one of statutory construction wherein, in deciding the question posed, we must look to the intent of our Legislature at the time the statute was enacted. See League of Women Voters v. Renfro, 292 Ala. 128,290 So.2d 167 (1974).
Our decision takes into consideration the legislative declaration that the respective acts should be liberally construed. However, this declaration does not allow this Court, in considering the construction of a statute, to expand the definitions beyond a reasonable interpretation of the language. The decision of the trial court is correct and it is hereby affirmed.
AFFIRMED.
MADDOX, JONES, SHORES, EMBRY and ADAMS, JJ., concur.
FAULKNER, ALMON and BEATTY, JJ., not sitting.