420 So.2d 71 (1982)
Carley A. BROWN, et al.
v.
Samuel M. LONGIOTTI, et al.
81-7.
Supreme Court of Alabama.
October 1, 1982.
Bill Fite and Jackie O. Isom, Hamilton, for appellants.
William H. Atkinson and James K. Davis of Fite, Davis & Atkinson, Hamilton, for appellees.
MADDOX, Justice.
The central issue in this appeal is whether the issuance of revenue bonds to finance the construction of a retail commercial establishment is authorized by amendment # 84 of the Alabama Constitution. We hold that amendment # 84 does not authorize the issuance of bonds to finance the construction of retail commercial establishments and, therefore, reverse the decision of the circuit court.
Appellants, a group of retail business owners in Marion County, brought suit against certain named parties and the city of Hamilton to challenge the city's plan to construct a retail shopping center and to issue industrial revenue bonds to finance its acquisition and construction. Under the terms of the plan, the land would be developed by the city and then leased to Samuel Longiotti who would in turn lease the property *72 to K-Mart. The bonds that the city proposes to issue are tax-exempt. From the circuit court's granting appellees' motion to dismiss and overruling of appellants' motion for new trial, the appellants pursue this appeal.
Appellants argue that amendment # 84 violates the due process and the equal protection clauses of the United States Constitution because it "fails to limit bond issues to projects furthering public purposes." Appellants contend further that "[e]ven if it could be assumed that amendment # 84 impliedly authorizes the issuance of revenue bonds only for public purposes, the evidence indicates that the instant project benefits only private parties." The constitutional argument which the appellants offer derives from a decision rendered by the Georgia Supreme Court concerning an amendment similar to amendment # 84. See Smith v. State, 222 Ga. 552, 150 S.E.2d 868 (1966). The decision of the Georgia court reads, in part:
"This amendment does not, as appellees argue, provide for the promotion and development of new industry in the county. New industry might be developed, but there is nothing in the Act which requires that the funds be used for development of new industry, or to relieve unemployment, or to provide new jobs so that its citizens may be furnished employment and not be forced to leave the county to find employment, or for any other public purpose."
150 S.E.2d at 871.
The Georgia Supreme Court concluded in Smith by ruling:
"Since the constitutional amendment authorizes issuance of the bonds for a private purpose, rather than a public purpose, the exemption of the private industry from taxes, while requiring plaintiffs and other private industries in the county to pay said taxes, would constitute taking of the property of plaintiffs and other taxpayers of Telfair County who are engaged in private business, without due process of law and would deny them equal protection of the law in violation of the federal Constitution. Thus, the constitutional amendment (Ga.L.1960, p. 1400) to Article VII, Section VII, Paragraph V (Code Ann. § 2-6005) is in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States."
150 S.E.2d at 872.[1]
The limitation that public money and credit can only be used for "public purposes" is a matter of due process and implicit in the Alabama Constitution. Board of Revenue and Comm'rs. v. Puckett, 227 Ala. 374, 377, 149 So. 850 (1933); Stone v. State, 251 Ala. 240, 243, 37 So.2d 111 (1948). Indeed, the premise that all appropriations or expenditures of public money by municipalities and indebtedness created by them must be for a public purpose as opposed to a private purpose is a widely recognized one. 15 McQuillin, Mun.Corp. § 39.19 (3d Ed.)
While there is no specific standard or test a court may use for distinguishing public purposes from private purposes, Note, Determining Permissible Municipal Expenditures: The Public Purpose Doctrine Revived, 7 U.Mich.J.L.Ref. 225, 226 (1973), the trend among modern courts is to give the term "public purpose" a broad expansive definition. Opinion of the Justices, 384 So.2d 1051, 1053 (Ala.1980). This is especially true of judicial review of industrial development bonding. Note, Industrial Development Bonds: A Proposal for Reform, 65 Minn.L.Rev. 961, 967 (1981); See generally, Note, The "Public Purpose" of Municipal Financing For Industrial Development, 70 Yale L.J. 789 (1961). Although industrial *73 development bonds were originally conceived as a way to stimulate manufacturing investment, some of the "less traditional" uses of these instruments now include:
"1. Commercial Real Estate Development.... shopping centers, ... corporate headquarters ... new branch bank offices ... office building and equipment purchases, including art work and stereophonic sound.
"2. Retail Stores .... department stores, drugstores, supermarkets, grocery stores, restaurants, ice cream parlors, fast food chains and automobile dealerships.
"3. Recreational Facilities .... including movie theaters, country clubs, skating rinks, bowling alleys, tennis and racquetball clubs, health clubs and golf courses.
"4. Tourist facilities .... hotels, motels, beach resorts, ski lodges.
"5. Health Facilities .... proprietary (for-profit) hospitals and nursing homes."
Congressional Budget Office, Preliminary Draft of Small Industrial Development Bonds 23-24 (October 1980); See generally, Pinsky, State Constitutional Limitations on Public Industrial Financing: An Historical and Economic Approach, 111 U.Pa.L.Rev. 265 (1963).
In reviewing amendment # 84, the entire amendment reads as follows:
"Any provision of the Constitution or laws of the state of Alabama to the contrary notwithstanding, any municipality in Marion county, or any one or more of them, shall have full and continuing power and authority, without any election or approval other than the approval of its governing body, to do any one or more of the following:
"1. To purchase, construct, lease, or otherwise acquire real property, plants, buildings, factories, works, facilities, machinery and equipment of any kind.
"2. To lease, sell for cash or on credit, exchange, or give and convey any such property described in subdivision 1 above, to any person, firm, association or corporation.
"3. To promote local industrial, commercial or agricultural development and the location of new industries or businesses therein.
"4. To become a stockholder in any corporation, association or company.
"5. To lend its credit or to grant public moneys and things of value in aid of, or to, any individual, firm, association, or corporation whatsoever.
"6. To become indebted and to issue and sell interest-bearing bonds, warrants (which may be payable from funds to be realized in future years), notes or other obligations or evidences of indebtedness, to a principal amount not exceeding fifty percent of the assessed value of taxable property therein as determined for state taxation, in order to secure funds for the purchase, construction, lease or acquisition of any of the property described in subdivision 1 above or to be used in furtherance of any of the other powers or authorities granted in this amendment. Such obligations or evidences of indebtedness may (in addition to any pledge or pledges authorized by subdivision 8 of this amendment) be issued upon the full faith and credit of the municipality or may be limited as to the source of their payment.
"7. To levy and collect annually, in addition to all other taxes now authorized or permitted, a special tax or taxes of not exceeding two percent on the value of all taxable property therein as determined for state taxation, in the same manner as other county or municipal taxes are levied and collected. Such tax may be upon all property in any municipality in Marion county or upon all property in any district the boundaries of which the governing body of such municipality shall describe and which it shall determine to be specially improved and benefited by any proposed use or expenditure of the proceeds of such tax.
"8. To pledge to the payment of any bonds, warrants, notes or other obligations or evidences of indebtedness the annual proceeds from any such special tax or taxes and to obligate itself irrevocably to continue to levy and collect such *74 taxes annually until such obligations or evidences of indebtedness are paid in full and to pledge thereto any rental or sale proceeds of property leased or sold by it.
"9. To create a public authority or corporation having such powers, managed and governed by such board or governing body and subject to such limitations as the governing body of any municipality in Marion county may impose, by approving and filing a certificate to that effect in the office of the judge of probate or the secretary of state, or their respective successors in function, and to delegate to such public authority or corporation and its board or governing body all powers and authority conferred in this amendment upon any such municipality.
"The recital in any bonds, warrants, notes or ther obligations or evidences of indebtedness that they were issued pursuant to this amendment or that they were issued to provide funds to be used in furtherance of any power or authority herein authorized or that any special tax herein authorized has been pledged to the payment thereof shall be conclusive; no purchaser or holder thereof need inquire further; and the levy and collection of such tax shall continue until the principal of and interest on such obligations or evidences of indebtedness shall have been paid in full. The bonds, warrants, notes or other obligations or evidences of indebtedness issued hereunder shall not be considered an indebtedness of any municipality in Marion county for the purpose of determining the borrowing capacity of such municipality under sections 224 and 225 of the Constitution; and the taxes herein authorized shall be in addition to those provided for or permitted in sections 215 and 216 of the Constitution and all amendments thereto.
"This amendment shall be self-executing; but the legislature shall have the right and power by general, special or local act to adopt laws supplemental to this amendment or in furtherance of the purposes and objectives hereinabove set forth."
When construing the Constitution of Alabama, the leading purpose of the Court is to ascertain and effectuate the intent and object originally intended to be accomplished. Alexander v. State, 274 Ala. 441, 446, 150 So.2d 204 (1963); State v. Birmingham So. Ry. Co., 182 Ala. 475, 491, 62 So. 77 (1913). In Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 495, 86 So. 56 (1920), the Court, quoting from Western Union Telegraph Co. v. State Board of Assessment, 80 Ala. 273 (1885), repeated:
"`Having been taught by experience that no legislative power is more liable to oppressive use than the taxing power, and having suffered evils by resting it too broadly on discretion, the people have shown, in the history of the successive constitutions, a progressive policy to restrain the power of the legislative department in this respect, and to remedy existing, and guard against apprehended, evils, by imposing limitations consistent with the public needs and the public safety. The just expositor, in interpreting the constitutional mandates and inhibitions, will consult the changes that have been made from time to time, the causes which produced them, and the mischief intended to be remedied. The words used should be allowed such operation and force as will reasonably accomplish the purposes proposed, but without extension beyond their legitimate meaning, and so as to avoid embarrassing or disabling proper governmental administration.'" [Emphasis added.]
Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. at 495, 86 So. 56. It is our duty, as a Court, to construe the meaning of words in constitutional amendments. Thus, having reviewed the facts of this case and construed the terms of this amendment, the Court is convinced that the bond offering for locating a retail store in the municipality of Hamilton is inconsistent with the intent and object of amendment # 84.
In McDonald's Corp. v. DeVenney, 415 So.2d 1075 (Ala.1982), this Court held that retail establishments such as McDonald's and K-Mart were not the type of *75 commercial enterprises that the legislature sought to bring to Alabama under the various acts designed to promote industry and trade. In that case, we stated:
"All of these acts express a similar intent and purpose, that is, to give a municipality or county the power to offer inducements to industrial, manufacturing, commercial, and research enterprises to either locate in Alabama or expand existing facilities in this state. These acts authorize municipalities and counties to acquire industrial, manufacturing, commercial, and research projects and to issue bonds to finance the cost of such acquisitions.
. . . . .
"This Court is of the opinion that the intent of the Legislature in the passage of the 1977 County Board Act, as well as the Cater Act, the Wallace Act, and the 1961 County Act, was not to give retail business establishments desiring to expand their operations within the state such as McDonald's and K-Mart, ready access to lower cost financing than other retail businesses; the legislative intent was to induce, attract, and persuade businesses of a non-retail nature, particularly industrial, mining, manufacturing, and research enterprises, to locate here or to expand existing facilities in this state."
415 So.2d at 1079. We hold that the reasoning employed in McDonald's Corp. v. DeVenney is applicable to amendment # 84. Moreover, the sale of these tax-free bonds by the city of Hamilton would not serve a significant "public purpose," but, instead would primarily benefit the individual lessee through lower rentals.
Therefore, this Court reverses the order of the circuit court and remands this case for action consistent with this holding.
REVERSED AND REMANDED.
TORBERT, C. J., and FAULKNER, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs in the result.
JONES, Justice (concurring in the result).
I concur in the result reached by the majority opinion to reverse and remand. I would follow the rationale of the Georgia Supreme Court in Smith v. State, 222 Ga. 552, 150 S.E.2d 868 (1966), which is set forth in the majority opinion.
NOTES
[1] State ex rel. McLeod v. Riley, 278 S.E.2d 612 (S.C.1981), held a provision of the South Carolina Constitution authorizing industrial revenue bonds to finance commercial shopping centers to be unconstitutional. The benefits to the public in this instance were held to be remote and indirect, preventing the undertakings authorized by the constitutional amendment from coming "within the ambit of `public purpose.'" This case was cited by appellants in oral argument before the Court.