EARLE T. FIDDLER, Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

No. 52. Argued May 21, 1945.—Decided July 6, 1945.

H. S. McConnell and Jorge M. Morales for petitioner. Julio Suárez Garriga, Acting Attorney General, and Zoilo Dueño González, Assistant Attorney General, for intervener, Treasurer of Puerto Rico.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The petition for certiorari herein, filed by Earle T. Fiddler, a taxpayer, is based on the following facts:

The petitioner and his wife are citizens of the United States and residents of Stanford, State of Connect-

icut. On July 29, 1942, the Treasurer of Puerto Rico notified the petitioner of a deficiency amounting to $4,034.12, in connection with his income tax return for the taxable year which ended December 31, 1936, plus interest thereon at the rate of 6 per cent per annum from June 15, 1937, to August 15, 1942, which amounted to $1,250.58.

In the appeal taken to the Court of Tax Appeals, the appellant alleged that the Treasurer had erroneously consolidated the return filed by Earle T. Fiddler with the one filed by his wife Margaret H. Fiddler. Said court sustained the appeal and held that the deficiency determined by the Treasurer as a result of the consolidation of the returns, was nonexistent, and that the Treasurer should make a new liquidation, in accordance with the terms of the decision rendered. On October 29, 1943, the Treasurer sent to the petitioner a "Notice and Demand" for the payment of the tax at the rate fixed by the Income Tax Act for persons not residing in Puerto Rico instead of at the rate fixed by the same Act for residents of this island.

The petitioner again appealed to the Tax Court, praying that the Treasurer of Puerto Rico be ordered to make a new liquidation taking as a basis therefor the tax rate applicable to residents of the Island. In support of his contention that the application of a higher rate to nonresidents was unconstitutional, the petitioner filed a memorandum of authorities; whereupon said court, deeming the constitutional question raised to be one of "unquestionable legal importance" directed the representative of the Treasurer to file a memorandum in reply to that of the petitioner. The Treasurer filed his memorandum, wherein he upheld the constitutionality of the statute fixing a higher tax rate for nonresidents. On March 19, 1945, the said court entered a decision dismissing the petition for a new liquidation and ordering the Treasurer to collect the tax in accordance with the decision rendered on October 19, 1943. On April 17,

1945, the Treasurer notified the petitioner of a deficiency amounting to $229.12, plus $107.76 as interest thereon at 6 per cent per annum from June 15, 1937, to April 17, 1945; and of another deficiency amounting to $271.62, plus $127.75 as interest, in respect of the return filed by Mrs. Fiddler. After paying those amounts under protest, the petitioner instituted the present proceeding for review and reversal of the decision rendered by the respondent tribunal on March 19, 1945.

The grounds for the decision sought to be reviewed are, in short, as follows: In the original appeal filed with the Court of Tax Appeals, on October 8, 1942, the appellant only raised the question of the illegality of the consolidation of the returns as made by the Treasurer; and he failed to set up the unconstitutionality of the Act which authorizes the Treasurer to impose on American citizens not residing in Puerto Rico a higher tax rate than the one fixed by the same Act for those residing in the Island. The said tribunal declared that the appellant should not be permitted to raise new legal questions by resorting "to the subterfuge of a motion for revision of calculations which should be confined to charging an erroneous computation."

From the notice of deficiency sent to the petitioner on July 29, 1942, it appears that said deficiency was determined on the basis of the consolidation of the returns filed separately by the Fiddler spouses, but it does not clearly or specifically appear that the amount of the tax claimed by the Treasurer had been determined by applying the tax rate fixed by the Act for nonresident citizens. In the notice and demand served on the petitioner on October 29, 1943, it was stated for the first time that the amount of the tax had been computed on the basis of the 6 per cent rate applicable to nonresidents. Said notice and demand of deficiency was based on grounds other than those set forth in the original notice. There is no doubt that, in accordance with the best

practice, the appellants should raise in their original appeals all the legal questions on which they intend to rely for seeking the reversal of the decisions of the Treasurer. We cannot, however, agree that the Tax Court acted correctly in refusing to consider and determine the constitutional question submitted to it through the motion for revision of the calculation—a matter which the tribunal itself considered of "unquestionable legal importance" to justify ordering the Treasurer to submit, as he did, a brief on the merits thereof.

Section 4 of Act No. 169, approved May 15, 1943, whereby exclusive jurisdiction is vested in the Tax Court to take cognizance of actions and proceedings relating to the levying, collection, payment, or reimbursement of all kinds of taxes, including income taxes, provides that the proceedings before said court shall be governed by the rules of the court, by the Code of Civil Procedure, and by such Rules of Civil Procedure as the Supreme Court may promulgate, and "all these provisions shall be liberally construed and applied, with the fundamental purpose of doing substantial justice to the parties in controversy."

In the case at bar, the Tax Court did not peremptorily deny the motion for the making of a new liquidation. Considering that the constitutional question raised was of great importance, and that it was its duty to construe the Act liberally so as to do substantial justice to the parties, said court took the motion under advisement and compelled the Treasurer to file a memorandum of authorities to justify his action. Up to that moment the court acted in accordance with the spirit of the statute. However, when deciding the motion, it overlooked the fundamental purpose of doing substantial justice to the parties, strictly construed the rules of procedure, refused to consider or determine the question that had been submitted to it, and affirmed the decision of the Treasurer, without taking into account that in so doing it was perhaps upholding the violation of the constitutional

rights of a taxpayer and permitting the Treasurer to collect sums of money in excess of the ones authorized by law.

We are of the opinion that the respondent tribunal erred in not considering the notice and demand of October 29, 1943, as a new notice of deficiency. We now turn to consider and decide said constitutional question.

■■ The petitioner maintains that the provisions of §§ 12(a) and 18(e) of the Income Tax Act, approved August 6, 1925, as amended by Act No. 18 of June 3, 1927, effective on January 1, 1928, whereby American citizens not residing in Puerto Rico are subjected to a higher tax rate and are granted less favorable deductions than the rate levied on, and the deductions granted to, citizens residing in this island, are contrary to the provisions of § 2 of the Organic Act and of § 1 of the Fourteenth Amendment to the Federal Constitution, and violate the constitutional rights of the petitioner, depriving him of his property without due process of law, denying to him the equal protection of the laws, and abridging the privileges and immunities to which the petitioner is entitled as a citizen of the United States.

The legal provisions attacked by the petitioner herein are as follows:

"Section 12.—(a) There shall be levied, collected and paid for each taxable year upon the net income of every individual a normal tax of 6 per centum of the amount of the net income in excess of the credits provided in section 18, except that in the case of a resident of Porto Rico the rate upon the first $4,000 of such excess amount shall be 2 per centum, and upon the next $4,000 of such excess amount shall be 4 per centum.

"Section 18.—For the purpose of the normal tax only there shall be allowed the following credits: (a) The amount received as partnership profits or dividends (1) from a domestic corporation or (2) from a foreign corporation when it is shown to the satisfaction of the Treasurer that more than 50 per centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such

dividends (or for such part of such period as the corporation has been in existence) was derived from sources within Porto Rico as determined under the provisions of section 19.

"(b) The amount received as interest upon obligations of the United States, the obligations of The People of Porto Rico or of any political subdivision thereof, which is included in gross income under section 15.

"(c) In the case of an unmarried person, a personal exemption of $1,000; or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $2,500. A husband and wife living together shall receive but one personal exemption. The amount of such personal exemption shall be $2,500. If such husband and wife make separate returns, the personal exemption may be taken by either or divided between them.

"(d) $400 for each person (other than husband or wife) dependent upon and receiving his chief support from the taxpayer if such dependent person is under twenty-one years of age or is incapable of self-support because mentally or physically defective.

"(e) Nonresident individuals not citizens of Porto Rico shall not be entitled to the personal exemption provided for in clause (c), nor to the credits allowed in clause (d)."

Pursuant to the provisions of § 12(a), *supra*, the Treasurer in assessing the tax to be paid by the petitioner took into account the fact that the petitioner had his domicile in the State of Connecticut and imposed upon him a normal tax of 6 per cent of the amount of the net income in excess of the credits provided by § 18. The petitioner maintains that the action of the Treasurer constitutes an illegal discrimination against him, based on the mere fact that he is not a resident of Puerto Rico; and that he is entitled to have the tax assessed in his case at the same rate fixed by the Act for resident citizens, that is, 2 per cent upon the first $4,000 of net income in excess of said credits, 4 per cent upon the next $4,000 of said net income; and 6 per cent upon the remaining net income.

Our decisions in *Nitrate Agencies Co.* v. *Domenech, Treas.*, 44 P.R.R. 498, and *Ballester* v. *Court of Tax Appeals*, 61 P.R.R. 460, are not applicable to the present case.

In the first of those cases there was involved a foreign corporation authorized to do business in Puerto Rico, to which the Treasurer had refused to allow the credits or deductions granted by the Act to domestic corporations. The return of the amount illegally collected by the Treasurer was ordered. In the *Ballester* case, the Treasurer had imposed on an alien residing in Puerto Rico a higher tax rate than the one fixed by the Act for resident citizens. We held that the Act, insofar as it authorized a discrimination against resident aliens, was unconstitutional and void as violative of the equal protection of the laws and the uniformity of taxation clauses of the Organic Act.

The question involved in the instant case—the constitutionality of a tax discrimination in favor of a resident American citizen and against one not a resident of the Island—is new in this jurisdiction.

Has an American citizen, domiciled in one of the forty-eight States of the Union, the right to invoke the constitutional guaranties regarding the equal protection of the laws and the protection against laws which may abridge his privileges and immunities as a citizen of the United States so as to prevent the imposition upon him by another State—by reason of the mere fact of his not having his domicile in said State—of a higher tax than the one imposed on those residing there?

In *Travis* v. *Yale & Towne Mfg. Co.*, 252 U.S. 60, 64 L. ed. 460, there was pleaded the unconstitutionality of §§ 362 and 363 of the Income Tax Act of New York whereby the residents of the State were granted certain exemptions which were denied to nonresidents. In holding that said Sections were unconstitutional, the Supreme Court said:

"The District Court, . . . . held that the act, in granting to residents exemptions denied to non-residents, violated the provision of § 2 of Art. IV of the Federal Constitution: 'The Citizens of each State shall be entitled to all Privileges and Immunities of

Citizens in the several States'; and, notwithstanding the elaborate and ingenious argument submitted by appellant to the contrary, we are constrained to affirm the ruling.''

The fundamental purposes of the above-quoted constitutional clause are to place the citizens of each State upon the same footing with citizens of other States, in all that concerns the advantages and rights resulting from citizenship in those States; to relieve them from the disabilities of alienage in other States; to prohibit discriminating legislation against them by other States; to insure to them the right of free ingress into, and egress from, other States and the right to enjoy in each of those States the same freedom possessed by the citizens of said States in the acquisition and enjoyment of property; and to secure to them in other States the equal protection of their laws. As aptly said by Mr. Justice Field in *Paul* v. *Virginia,* 8 Wall. 168, 19 L. ed. 357, ''It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this.'' See *Ward* v. *Maryland,* 12 Wall. 418, 20 L. ed. 449.

We further quote from the opinion in the case of *Travis* v. *Yale, etc., supra:*

''. . . . . but a general taxing scheme such as the one under consideration, if it discriminates against all non-residents, has the necessary effect of including in the discrimination those who are citizens of other States; and, if there be no reasonable ground for the diversity of treatment, it abridges the privileges and immunities to which such citizens are entitled.

''\*          \*          \*          \*          \*          \*          \*

''The nature and effect of the crucial discrimination in the present case are manifest.

''In the concrete, the particular incidence of the discrimination is upon citizens of Connecticut and New Jersey, neither of which States has an income tax law. A considerable number of complainant's employees, residents and citizens of one or the other of those States, spend their working time at its office in the city of New York, and earn their salaries there . . . . . They pursue their several

occupations side by side with residents of the State of New York —in effect competing with them as to wages, salaries, and other terms of employment. Whether they must pay a tax upon the first $1,000 or $2,000 of income, while their associates and competitors who reside in New York do not, makes a substantial difference. Under the circumstances as disclosed, we are unable to find adequate ground for the discrimination, and are constrained to hold that it is an unwarranted denial to the citizens of Connecticut and New Jersey of the privileges and immunities enjoyed by citizens of New York. This is not a case of occasional or accidental inequality due to circumstances personal to the taxpayer (citing authorities); but a general rule, operating to the disadvantage of all non-residents including those who are citizens of the neighboring States, and favoring all residents including those who are citizens of the taxing State."

It would really be unjust to hold that the Legislature can not constitutionally impose a higher tax rate on an alien residing in Puerto Rico because of the mere fact of his alienage, as we decided in *Ballester* v. *Court of Tax Appeals*, *supra*, and yet hold that there is no constitutional obstacle to the imposition of such higher rate on a citizen of the United States simply because he is such citizen and a resident of one of the States of the Union. A resident alien is protected by the constitutional provision regarding the equal protection of the laws; and a citizen of the United States who resides in one of the States, of which he is also a citizen, finds protection against unjustifiable discriminations based on the mere fact of his nonresidence, in § 1 of the Fourteenth Amendment which provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

We are of the opinion that the discrimination complained of by the petitioner violates the specific provisions of the Organic Act "that the rule of taxation in Porto Rico shall be uniform." Undoubtedly, the Legislature is empowered to establish distinct classifications among the taxpayers; but those classifications must have a reasonable basis in order to be valid. The mere fact that a taxpayer, who is a citizen

of the United States, has established his domicile in one of the States of the Union, does not constitute a reasonable basis for the classification, such basis being contrary to the constitutional provision which guarantees to all citizens of the nation the enjoyment, within a State, of the same rights granted by said State to its citizens and residents. The imposition of additional penalties to nonresident citizens and the denial to the latter of tax exemptions, which are allowed by the laws of a State to its citizens, are discriminations which violate the constitutional rights of nonresidents and cannot be upheld· See *Bachrack* v. *Nelson,* 349 Ill. 579, 182 N. E. 909; *Blaustein* v. *Levin,* 4 A. 2d. 861, 176 Md. 423; 6 R.C.L., p. 427, § 424; *Eliasberg Bros. Mercantile Co.* v. *Grimes,* 204 Ala. 49292, 86 So. 56, 11 A.L.R. 300, 311.

In *Buscaglia, Treas.* v. *Tax Court,* 64 P.R.R. 575 we held that the provisions of the Income Tax Act which imposed on foreign corporations authorized to do business in Puerto Rico a higher tax rate than the one imposed on domestic corporations was unconstitutional, because from the moment a foreign corporation obtains a license to do business in this island it acquires the constitutional right to the equal protection of the insular laws.

The petitioner herein is a natural person, and a citizen and resident of the State of Connecticut. As such citizen, the petitioner need not obtain any license to enter and do business in Puerto Rico. The Federal Constitution secures to him free access to any portion of the national territory —constituted by the forty-eight States, territories, and insular possessions under the jurisdiction and control of the Federal Government—and the right to enjoy within said national territory the same privileges and immunities granted by the State or territorial laws to resident citizens.

For the reasons stated we hold that the provisions of §§ 12(*a*) and 18(*c*), (*d*), and (*e*). *supra,* insofar as the same

impose on American citizens not residents of Puerto Rico a higher tax rate and deny to them the deductions allowed to resident citizens, are unconstitutional and void.

The decision sought to be reviewed should be set aside and the case remanded to the Tax Court for further proceedings not inconsistent with this opinion.